# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| ANN LANGFORD, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 14-00070-KD-M |
| | ) |
| HALE COUNTY, ALABAMA | ) |
| COMMISSION, *et al.*, | ) |
|     Defendants. | ) |

## ORDER

**I.**    **Analysis**

After due and proper consideration of the issues raised, and there having been no objections filed, the Report and Recommendation (Doc. 16) of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) and dated May 20, 2014, is **ADOPTED in part** and **revised in part**, as follows:

The facts are, briefly, as follows. Plaintiff Ann Langford is a 59 year-old Caucasian woman, residing in Hale County, Alabama, formerly employed as the Chief Clerk of the Hale County Probate Office (Doc. 1, ¶¶ 4, 8). On March 11, 2013, Defendant Crawford terminated Langford's employment without prior notice or hearing (Doc. 1, ¶¶ 7, 22-23); Langford's replacement was a younger Black woman (*id* at ¶ 28). Langford filed a grievance with the Commission challenging her termination; the grievance was denied on May 1, 2013 without a hearing (*id.* at ¶¶ 5, 33-34). Plaintiff appealed the denial to the Personnel Review Board,[1] but her objections were rejected (*id.* at ¶¶ 35, 37). Langford filed a complaint with the Equal Employment Opportunity Commission and, on November 22, 2013, was granted a "Right to Sue Letter" to pursue this action in Court (*id.* at ¶ 38; Doc. 1, Exhibit A).

---
[1]The Personnel Review Board is not a party to this action.

On February 18, 2014, Langford filed this action, claiming that the previously-named Defendants: (1) violated her Fourteenth Amendment Due Process rights; (2) violated her Fourteenth Amendment Equal Protection rights; (3) violated her First Amendment rights to freedom of speech and political association; (4) discriminated against her because of her race; (5) discriminated against her because of her age; (6) discriminated against her because of her race;[2] and (7) retaliated against her for pursuing protected activities (Doc. 1).[3] Defendants subsequently filed this Partial Motion to Dismiss (Docs. 7, 10); Langford filed a response (Doc. 13) to which the Defendants have replied (Doc. 14).

The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[4] While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555

---

[2]Langford's fourth claim was brought under Title VII while the sixth claim was brought pursuant to 42 U.S.C. § 1981.

[3]Claims one through six were brought against all Defendants; Defendant Crawford was not named in the seventh claim.

[4]Though *Conley* was overruled on other grounds, *see Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007), the Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful in deciphering the analysis necessary for evaluating Plaintiff's claims.

(2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombley*, 550 U.S. at 556). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991).

Defendants first seek dismissal of a portion of Langford's third claim, a claim that Defendants violated her First Amendment right to freedom of political association.[5] They argue that her work as Chief Clerk of the Probate Court is a political patronage job and that dismissal is not unconstitutional on that basis (Doc. 10, pp. 4-6). As support for that argument, Defendants

---

[5]Defendants acknowledge that they have not moved to dismiss Lankford's freedom of speech claim (Doc. 14, p. 1 n.1).

have cited two different Alabama statutes, the first of which defines the powers of the probate court chief clerk:

> (a) The chief clerk shall have the following powers:
> (1) To issue letters testamentary, of administration and of guardianship, where there is no contest.
> (2) To administer oaths relating to the business of the court and to take and certify acknowledgments and proof of instruments authorized to be recorded.
> (3) To solemnize matrimony, approve bonds and appoint guardians ad litem.
> (4) To admit wills to probate and record and to pass and allow accounts of executors, administrators and guardians, where there is no contest.
> (5) To do all other acts and things and perform all other duties, ministerial and judicial, where there is no contest, that the probate judge may do and perform.
> (b) All of the official acts of such chief clerk must be performed in the name of the probate judge, except when there is a vacancy in that office.

Ala. Code § 12-13-14. The second statute states as follows:

> Whenever a vacancy shall occur in the office of the probate judge, the chief clerk in that office, appointed and qualified as authorized by law, shall, during such vacancy and until the qualification of a lawful successor, perform all the duties of that office which he is authorized by law to perform when there is no vacancy, but must not receive money on decrees or executions or become the custodian of trust funds pertaining to the court. He may make all necessary orders for the continuances of cases and proceedings pending in the court.
> All such duties are to be performed, during such vacancy, by such chief clerk in his own name as clerk of the probate court, and he is entitled to the lawful fees therefor. For his official acts under this article, such chief clerk and the sureties on his bond to the probate judge shall be liable to persons injured according to the legal effect of official bonds as declared by statute.

Ala. Code § 12-13-15.

The Court notes that the chief clerk's responsibilities, listed in the first statute, do not include discretionary duties; specifically, three subsections of the first section of the statute

4

preclude the clerk from performing certain tasks if the parties have a dispute. In the second statute, the chief clerk gains no responsibilities when the judge's position is vacant; rather, the clerk is allowed to order that whatever work arises—other than what the clerk already has the authority to do—be continued. These statutes do not provide support for the Defendants' argument that the chief clerk is the alter ego of the probate judge.

The Court further finds that the cases cited by Defendants do not lend support to their argument. In one such case, the Eleventh Circuit Court of Appeals held that a deputy sheriff is the alter ego of the sheriff. *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989) (*citing Mosely v. Kennedy*, 17 So.2d 536, 537 (Ala. 1944)). The *Terry* Court further noted, though, that "[a]ny transaction within the scope of the sheriff's duties may be acted upon by his deputy," *Terry*, 866 F.2d at 377 (*citing Ramsey v. Strobach*, 52 Ala. 513, 515 (1875)).

Under *Terry*, the deputy can do anything the sheriff can do. However, the chief clerk is restricted from doing everything that the probate judge can do by statute. This does not further Defendants' argument.

Defendants also cite *Underwood v. Harkins*, 698 F.3d 1335, 1343-44 (11th Cir. 2012), *cert. denied*, --- U.S. ---, 134 S. Ct. 99 (2013), in which the Eleventh Circuit Court of Appeals held that a deputy superior court clerk performed the identical tasks as the court clerk and that the clerk could dismiss the deputy clerk from that position for having run against the clerk in the political party's primary election. Again, however, the duties of the two positions were the same; that is not the circumstance in this action. More significant though is the fact that *Underwood* is a case based on Georgia law; Defendants have failed to demonstrate the relevance of Georgia law to this action.

Defendants' Motion to Dismiss (Doc. 7) is due to be denied as to Langford's third claim. Defendants have not even argued—much less demonstrated—that Langford has failed to set out the necessary facts to proceed with her claim that Defendants violated her First Amendment right to freedom of political association. Instead, Defendants have attempted to prove that Langford's claim is not viable as a matter of law. However, the laws brought forth to support their argument, if anything, provide support for Plaintiff's argument that this claim should not be dismissed.

Defendants also seek to have the Court dismiss Plaintiff's claim that her due process rights were violated. The first argument raised is that Langford did not have a property interest in her job (Doc. 10, pp. 6-9).

The United States Supreme Court has noted that the "Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). The Court went on to hold that "[p]roperty interests [] are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577. The Court notes that "State law defines the parameters of a plaintiff's property interest for section 1983 purposes. 'Whether state law has created a property interest is a legal question for the court to decide.'" *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1559 (11th Cir. 1991) (*quoting Marine One, Inc. v. Manatee County*, 877 F.2d 892, 894 (11th Cir. 1989), *rehearing denied*, 898 F.2d 1490 (11th Cir. 1990)).

As for Alabama law, the Alabama Supreme Court has stated the following:

> It has long been the law in Alabama that employment is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. "[A]bsent an agreement on a definite term, any employment is considered to be 'at-will,' and may be terminated by either party, with or without cause or justification." *Clark v. America's First Credit Union,* 585 So.2d 1367, 1369 (Ala. 1991). Furthermore, employees in Alabama bear a heavy burden of proof to establish that an employment relationship is other than "at will." The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied. *Alabama Mills, Inc. v. Smith,* 237 Ala. 296, 301, 186 So. 699, 704 (1939).

*Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 310-11 (Ala. 1992), *cert. denied*, 507 U.S. 1031 (1993). The Alabama Supreme Court has gone on to say that

> three elements must be shown to establish that an employment contract is one other than one terminable at will: (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered.

*Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987) (citations omitted).

However, the *Hoffman-La Roche* Court went on to hold that

> the language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration.

7

*Hoffman-La Roche*, 512 So. 2d at 735. The Parties acknowledge that Langford was given a handbook by her employer (Doc. 10, p. 8; Doc. 13. pp. 3-4). The Court will review the handbook, entitled *Hale County Personnel Policy*, to determine if a binding unilateral contract was created (*see* Doc. 10, Exhibit A).[6] The Court notes the following language:

> "Each employee will be given a copy of his/her job description and an Employees Handbook, outlining all rules, regulations, policies, conditions, and benefits of County Employee employment. Both employee and management/supervisory staff will be required to know and productively implement all provisions and conditions of employment." Section II, ¶ D.

> "All employees have the right to discuss any and all matters relating to their employment and/or their personal welfare with their supervisors. They may communicate with their supervisors, either orally or in writing, and may be accompanied by representation of their choice. When disagreement over the solution of a problem cannot be resolved, permanent employees shall have access, through a grievance procedure, to successively higher levels of management. Management/supervisory personnel will produce resolution of problems and grievances, attempting always to ensure every permanent employee the right to due process under the grievance procedure." Section II, ¶ F.

> "The County believes that the goal of productivity in county employment will be served by establishing a probationary period for new employees during which each employee is oriented to all the conditions and requirements of county work and during which his/her performance is closely supervised and monitored to assure the attainment of the minimum performance requirements for the job/position. Probationary employees shall share in all the benefits of employment with the county except that dismissals for cause during the probationary period shall not be grievable." Section II, ¶ I.

> "Employees are expected to attend work regularly, arriving in time and spending the assigned time in productive work efforts. They are also expected to deal honestly, fairly and efficiently with the County's resources and citizens. When employees cannot or

---

[6] Defendants provided several pages of the handbook, including the title page. Plaintiff submitted a larger portion of the handbook, though, so the Court will cite to Langford's submission (Doc. 13, Exhibit A).

will not conform to the Personnel Rules and Regulations as outlined herein, they may be disciplined in the following ways:

1. <u>Verbal Reprimand:</u> a notification of which will be placed in the personnel file;
2. <u>Written Reprimand:</u> a copy will be placed in the personnel file. The employee will also be given a copy of the written reprimand;
3. <u>Suspension:</u> for up to ten (10) consecutive working days. Suspensions of an aggregate of twenty-five (25) days in any calendar year (dating from the first suspension) will result in termination. Suspensions are without pay.
4. <u>Demotion and Reduction in Pay;</u>
5. <u>Transfer;</u>
6. <u>Termination;</u>

Steps 4, 5 and 6 shall be only with the concurrence of the County Engineer. An appeal can be made following the steps in grievance procedure.

The following are among the actions or circumstances which are considered to be grounds for disciplinary action:

: Chronic absenteeism
: Failure or refusal to carry out the duties of the job
: Refusal to obey a lawful order from a superior
: Failure to follow established lines of authority in a grievance
: Willful or wanton destruction or damage of County property or equipment. Section VII.

Doc. 13, Exhibit A. The Handbook also sets out a grievance procedure, allowing a disciplined employee to seek review of the disciplinary action by the Personnel Review Board and the County Commission (Doc. 13, Exhibit A, p. 8).

The Court finds that, for purposes of this Motion, these few passages indicate that a binding unilateral contract was formed under *Hoffman-La Roche* because of the following factors. The handbook discusses permanent versus probationary employees; though neither is defined, Langford was, presumably, a permanent employee as she was employed in her position for six years (Doc. 1, ¶ 8). Langford received an employee handbook and continued to work. As found in *Hoffman-La Roche*,

> the language used in this handbook is clear enough than an employee reading it could reasonably believe that, as long as [s]he worked within the guidelines set out in the handbook, [s]he would not be terminated until all procedures set out in the handbook had been followed, including the reasons and circumstances for termination in the handbook.

*Hoffman-La Roche*, 512 So. 2d at 736-37. With this finding, the Court further holds that Langford has established a property interest in her employment.

This finding brings the Court to Defendants' second argument with regard to this claim. That assertion is that even if Langford had a property interest in her continued employment, she cannot state a claim against Defendants for violating her due process rights (Doc. 10, pp. 9-11).

Langford's Complaint asserts that even though there was a grievance process set out in her employee Handbook, she appealed to the Hale County Commission and that it acted "without providing any notice [] that it was considering the grievance or providing her with an opportunity to defend herself" (Doc. 1, ¶ 34). She goes on to state that she timely appealed to the Personnel Review Board whose members were biased against her (Doc. 1, ¶¶ 35-36). In setting out the specific contours of her due process claim, Langford asserts that she was not "provided with notice or an opportunity to be heard on her grievance" (Doc. 1, ¶ 42).

The Court notes that step three of the grievance procedure, found in the Handbook, allows an employee to appeal a disciplinary action to the Personnel Review Board and indicates

that the employee can attend the proceeding and have representation (Doc. 13, Exhibit A, p. 8). The written recommendation of that Board goes to the County Commission, at step four of the process, which accepts or modifies the recommendation and adopts it or rejects the recommendation altogether (Doc. 13, Exhibit A, p. 8).

While Langford's chronology of events does not correspond to the grievance procedure steps, there is a clear assertion that Lankford did not get to be heard on her grievance as provided for in the Handbook. The Court finds that Langford has asserted sufficient facts to demonstrate that she was denied the process offered by her employer following her termination. This does not, however, end the inquiry.

Defendants have staked their argument on *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (*en banc*), *cert. denied sub nom. McKinney v. Osceola County Board of County Commissioners*, 513 U.S. 1110 (1995), in which the Eleventh Circuit Court of Appeals held that a claim of bias, such as this, was a procedural due process claim—as opposed to a substantive due process claim—since "the County failed to provide one of the elements of procedural due process—an unbiased decisionmaker." The *McKinney* Court went on to hold that the plaintiff in that case had not stated a procedural due process claim under § 1983, however, because state law provided an adequate remedy through the Florida court system. *McKinney*, 20 F.3d at 1563-64.

Defendants argue that Alabama also provides a remedy at law through its courts (Doc. 10, p. 10). Indeed, the Eleventh Circuit Court of Appeals held that Alabama courts "review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Bell v. City of Demopolis, Alabama*, 86 F.3d 191, 192 (1996) (*citing Ex Parte Tuskegee*, 447 So.2d 713 (Ala. 1984); *Guinn v. Eufaula*, 437 So.2d 516 (Ala. 1983)). In Alabama, a claimant can file

a common law writ of *certiorari* to seek review of a perceived wrongful termination because of a due process violation. *See Hicks v. Jackson County Commission*, 990 So.2d 904, 912 (Ala. Civ. App. 2008). Accordingly, Defendants' Motion to Dismiss (Doc. 7) is due to be granted as to Langford's claim that she was denied due process in her post-termination proceedings because Langford has a remedy for her claim in the state courts.

However, the motion to dismiss Langford's claim regarding the defendants' failure to provide a pre-termination due process is due to be denied. Public employment affords employees with a property interest in their job certain minimal pre-termination due process rights. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); see also *Harrison v. Willie*, 132 F.3d 679, 683-84 (11th Cir. 1998) (considering whether the plaintiff was denied a pre-termination hearing); *McCoy v. Alabama Dep't of Corr.*, 427 F. App'x 739, 741 (11th Cir. 2011) (discussing an state employee's pre-termination due process rights); *Ogburia v. Cleveland*, 380 F. App'x 927, 929-30 (11th Cir. 2010) (discussing pre-termination due process separately from whether plaintiff had an adequate state remedy for his claim of post-termination due process right violation). Thus, if a plaintiff pleads sufficient facts "that suggest [s]he was denied any pre-termination hearing, [s]he could state a violation of a clearly established constitutional right." *Haddler v. Walker Cnty., Ala.,* No: 6:14-CV-00586-LSC, 2014 WL 2465322, * 4 (N.D. Ala. May 30, 2014).

The due process that *Loudermill* calls for does not require that an employee be given a full evidentiary hearing. <u>Id.</u> at 545. Instead, the hearing need only serve as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." <u>Id.</u> at 545-46. An employer can satisfy this requirement by giving "notice and an opportunity [for the

employee] to respond." *Id.* at 546; *Harrison*, 132 F.3 at 684 ("The importance of the Plaintiff's property interest makes it necessary to provide some sort of pre-termination hearing, which includes notice and an opportunity to be heard.").

Langford alleges that she was denied due process because Defendants terminated her employment without any explanation, notice, or hearing. In response, Defendants allege that the State of Alabama provides an adequate post-termination remedy for any deprivation of due process that may have occurred. In support of this argument, Defendants cite *McKinney* and *Bell* as controlling the issue.

The Defendants' argument, however, fails to take into consideration the fact that, if Langford has a vested property right, as a public employee she has certain pre-termination due process rights which cannot be addressed by post-termination processes. "In cases of public employment, the Supreme Court has recognized that termination without *any* pre-termination hearing is an independent violation of due process." *Haddler*, at *4. This being so, the Court finds that McKinney and Bell do not control the issue of whether Defendants satisfied the pre-termination due process required by *Loudermill*. Thus, Langford's claim is not due to be dismissed on the grounds that state law allows a remedy.

Finally, Defendants seek this Court's ruling that Defendant Crawford is entitled to qualified immunity in his individual capacity (Doc. 10, pp. 12-15). The Court notes that although Defendants assert immunity on Plaintiff's First and Fourteenth Amendment claims (counts one and three), no argument has been made as to Langford's claim for a violation of her Equal Protection rights (count two).

"Government officials sued for acts committed in the course of their official duties may invoke the defense of qualified immunity. To be even potentially eligible for qualified

immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.'" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (*quoting Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)). To make this determination,

> [i]nstead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. . . . In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

*O'Rourke*, 378 F.3d at 1205 (*quoting Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004)).

The Court notes that Langford makes no argument as to whether or not Defendant Crawford's discretionary duties included disciplinary action against her, including termination (*see* Doc. 13, p. 5). As such, the Court finds that his action was discretionary and will continue with the analysis.

With this finding, it is Langford's burden to demonstrate that Judge Crawford is not entitled to qualified immunity by showing "that the defendant violated a constitutional right, and that the right was clearly established at the time of the alleged violation." *O'Rourke*, 378 F.3d at 1206 (*citing Holloman*, 370 F.2d at 1266).

> A party may show that the law was clearly established by (1) pointing to "'a materially similar case [that has] already decided that what the [Defendant] was doing was unlawful;'" or (2) demonstrating that "the words of the pertinent federal statute or federal constitutional provision . . . [are] specific enough to establish clearly the law applicable to particular conduct and

14

circumstances and to overcome qualified immunity, even in the *total absence of case law.*

*Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003) (internal citations omitted).

The *Storck* Court went on to note that "'[u]nless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent [Defendant] or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.'" *Storck*, 354 F.3d at 1317-18 (*quoting Lassiter v. Alabama A & M University, Board of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*).

The Court has reviewed the case law and found the following relevant discussion in a United States Supreme Court case:

> As Mr. Justice BRENNAN noted in *Elrod*, it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered. [*Elrod v. Burn*, 427 U.S. 347,] 367 [(1980)]. Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character. As one obvious example, if a State's election laws require that precincts be supervised by two election judges of different parties, a Republican judge could be legitimately discharged solely for changing his party registration. That conclusion would not depend on any finding that the job involved participation in policy decisions or access to confidential information. Rather, it would simply rest on the fact that party membership was essential to the discharge of the employee's governmental responsibilities.
> It is equally clear that party affiliation is not necessarily relevant to every policymaking or confidential position. The coach of a state university's football team formulates policy, but no one could seriously claim that Republicans make better coaches than Democrats, or vice versa, no matter which party is in control of the state government. On the other hand, it is equally clear that the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments. In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can

15

> demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.
>
> Having thus framed the issue, it is manifest that the continued employment of an assistant public defender cannot properly be conditioned upon his allegiance to the political party in control of the county government. The primary, if not the only, responsibility of an assistant public defender is to represent individual citizens in controversy with the State.

*Branti v. Finkel*, 445 U.S. 507, 518-19 (1980).

Having already reviewed the Chief Clerk responsibilities, the Court will examine the duties of the Probate Judge. Statutory law sets them out to be as follows:

> (b) The probate court shall have original and general jurisdiction over the following matters:
> (1) The probate of wills.
> (2) The granting of letters testamentary and of administration and the repeal or revocation of the same.
> (3) All controversies in relation to the right of executorship or of administration.
> (4) The settlement of accounts of executors and administrators.
> (5) The sale and disposition of the real and personal property belonging to and the distribution of intestate's estates.
> (6) The appointment and removal of guardians for minors and persons of unsound mind.
> (7) All controversies as to the right of guardianship and the settlement of guardians' accounts.
> (8) The allotment of dower in land in the cases provided by law.
> (9) The partition of lands within their counties.
> (10) The change of the name of any person residing in their county, upon his filing a declaration in writing, signed by him, stating the name by which he is known and the name to which he wishes it to be changed.
> (11) Such other cases as jurisdiction is or may be given to such courts by law in all cases to be exercised in the manner prescribed by law.

Ala. Code § 12-13-1.

The Court notes that there does not appear to be any duty requiring that the Clerk and Probate Judge be of the same political mind to fulfill their respective responsibilities. For this

reason, under the guidance of *Branti*, Defendants' Motion to find that Defendant Crawford is entitled to qualified immunity is due to be denied as to Langford's third claim.

The same is true for Defendant Crawford's claim of qualified immunity for Langford's claim of a pre-termination due process rights violation. *Loudermill* clearly established that a public employee with a property right in her employment must be given notice and a hearing before she can be terminated. Defendant Crawford makes no argument that any pre-termination due process was provided to Langford.

**II.     Conclusion**

In accordance with the foregoing analysis, it is **ORDERED** that the Defendants' Partial Motion to Dismiss (Doc. 7) is **GRANTED** as to Langford's claim in Count I of the Complaint that she was denied due process in her post-termination proceedings, and is otherwise **DENIED**.

**DONE** and **ORDERED** this the **26th** day of **June 2014**.

      /s/ Kristi K. DuBose
      **KRISTI K. DuBOSE**
      **UNITED STATES DISTRICT JUDGE**