**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **ANN LANGFORD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 2:14-0070-KD-M** |
| ) | |
| **HALE COUNTY, ALBAMA COMMISSON,** ) | |
| *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This action is before the Court on Plaintiff Ann Langford's motion for partial summary judgment, brief and supporting evidence, Defendants Hale County, Alabama Commission, Hale County, Alabama, and Hale County Probate Judge Arthur Crawford's response and supporting evidence, and Langford's reply (docs. 25-27, 42, 48); and Defendants' motion for summary judgment, brief and supporting evidence, proposed determinations of undisputed facts and conclusions of law, Langford's response, and Defendants' reply and supporting evidence (docs. 29-32, 43, 47).

I. Procedural history

Langford is a Caucasian woman, residing in Hale County, Alabama, formerly employed as the Chief Clerk of the Hale County Probate Office.  On March 11, 2013, Defendant Probate Judge Arthur Crawford terminated Langford's employment without prior notice or hearing. Langford's replacement was an African-American woman.  Langford filed a grievance with the Hale County Commission challenging her termination; the grievance was denied on May 1,

2013, without a hearing.  Plaintiff appealed the denial to the Personnel Review Board,[1] but her objections were rejected.  Langford filed a complaint with the Equal Employment Opportunity Commission.  On November 22, 2013, she was granted a "Right to Sue Letter".

On February 18, 2014, Langford filed this action pursuant to 42 U.S.C. § 1983; 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, as amended, by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq* (Title VII); and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (Doc. 1).  Langford claims that the Defendants violated her Fourteenth Amendment Due Process rights (Count I), violated her Fourteenth Amendment Equal Protection rights on basis of race (Count II); violated her First Amendment right to freedom of speech and political association (Count III); discriminated against her because of her race in violation of Title VII (Count IV); discriminated against her because of her age (Count V); discriminated against her because of her race in violation of 42 U.S.C. § 1981 (Count VI); and retaliated against her for pursuing protected activities (Count VII) (Doc. 1).[2]

Defendants subsequently filed a partial motion to dismiss.  The motion to dismiss was granted in part.  Langford's claim in Count I of the Complaint that she was denied due process in her post-termination proceedings was dismissed (doc. 17).

II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56(c) governs procedures and provides as follows:

---

[1] The Personnel Review Board is not a party to this action.

[2] Counts I through VI are brought against all Defendants; Defendant Crawford was not named in Count VII.

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might

affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational

trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.,* 594

F.3d 798, 807 (11th Cir. 2010) (en banc) (citation omitted).  In general, the substantive law will

establish which facts are irrelevant or material. *See Anderson v. Liberty Lobby, Inc*., 477 U.S.

242, 248, 106 S. Ct. 2505 (1986).

If a non-moving party fails to make a sufficient showing on an essential element of its

case with respect to which it has the burden of proof, the moving party is entitled to summary

judgment. *Celotex*, 477 U.S. at 323.  In reviewing whether a non-moving party has met its

burden, the Court must not weigh the evidence and make credibility determinations. Instead, the

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its

favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal

citations and quotations omitted).

The applicable Rule 56 standard is not affected by the filing of cross-motions for

summary judgment. *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331

(11th Cir. 2005); *Gerling Global Reins. Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th

Cir. 2001).  "Cross-motions for summary judgment will not, in themselves, warrant the court in

granting summary judgment unless one of the parties is entitled to judgment as a matter of law

on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th

Cir.1984) (citation omitted). The Court is mindful that " '[w]hen both parties move for summary

judgment, the court must evaluate each motion on its own merits, resolving all reasonable

inferences against the party whose motion is under consideration.' " *Muzzy Products Corp. v.

Sullivan Industries, Inc*., 194 F. Supp.2d 1360, 1378 (N.D. Ga. 2002).

III. Findings of fact[3]

As a private citizen, Langford was involved in Hale County elections.  She served as a poll worker and poll watcher for absentee ballots among other duties.  In 2004, Langford and other citizens reported voting irregularities, including voter intimidation and voter fraud, to the United States Justice Department.  The Voting Rights Division of the Department of Justice and the Alabama Attorney General investigated the irregularities.

In 2006, Langford supported Leland Avery, a Caucasian male, when he ran for Probate Judge.  He was elected. In March 2007, Avery re-hired Langford as Chief Clerk.[4]  She did not go through an application process.  Langford left a full-time job to work as Chief Clerk. When Langford accepted the position she was provided a copy of the Hale County Personnel Policy. Her pay and employee benefits come from Hale County.  She was paid by the County Commission.

In 2009, Circuit Judge Marvin Wiggins, an African-American male, was alleged to have hampered the Alabama Attorney General's voter fraud investigation by quashing subpoenas and an arrest warrant.  In July 2009, he was found guilty of violations of the Canons of Judicial Ethics. Also, in 2010, as a result of the investigations, three persons plead guilty to absentee voter fraud, including Judge Wiggins' sister.

---

[3] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [the plaintiff] the nonmoving party." *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).  Moreover, on summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  *See also, e.g., Sharpe v. Global Sec. Int'l*, 766 F. Supp. 2d 1272, 1282 (S.D. Ala. 2011) (Steele, C.J.) ("[T]he Court . . . will not independently examine uncited portions of the record in search of support for a particular proposition[ on summary judgment]." (citing cases)).

[4] From approximately February 1995 until October 1998, Langford was employed as the Chief Clerk of the Hale County Probate Office.

In 2012, Defendant Arthur Crawford, an African-American male, campaigned against Judge Avery in the Democratic primary. The same political organization that had supported Judge Wiggins in his campaign supported Judge Crawford.  Judge Wiggins also supported Judge Crawford.  Langford supported Judge Avery in the 2012 campaign.

In November 2012, Crawford was elected as Probate Judge of Hale County by a write-in campaign after he was removed from the ballot for failure to comply with campaign disclosure laws. He took office on January 9, 2013.  Patricia Pickens, an African-American female, was in charge of Crawford's campaign account.

Defendant Crawford fired Langford on March 11, 2013.  At deposition, he testified that he fired Langford because she did not tell him that another Probate Clerk, Laura Barrett was quitting her job.[5] Defendant Crawford learned of Barnett's leaving on March 11, 2013 at 9:15 a.m., and orally fired Langford that afternoon at 4:30 p.m.

Defendant Crawford further testified that Langford failed to inform anyone that Judge Avery retired early and she continued to run the Probate Office.  He also testified he thought Langford may have removed property from the Probate Office and was responsible for at least one check being lost.  Defendant Crawford also testified that Langford was rude, grudgingly did

---

[5]  Judge Crawford testified that Barrett told him that Barrett told Langford a month before that she was leaving work, and that Langford said that she would tell Judge Crawford, but Langford did not tell him.  From this, not telling him after knowing for a month that Barrett was leaving, Judge Crawford decided that Langford could not be trusted to carry out the duties of Chief Clerk. Judge Crawford believed Barrett and did not ask Langford for her side of the story before terminating her that same day.

Langford states that Barrett told her ten days before Barrett spoke with Judge Crawford, that Judge Crawford was out of the office for approximately seven days of those ten days, and that Barrett told Judge Crawford the first day he returned. Langford testified that she did not tell Barrett that she would tell Judge Crawford.  Langford thought Barrett would tell Judge Crawford that she was going to resign.

only the bare minimum required of her position, and that he received more assistance from the other clerks.

Defendant Crawford admits in his deposition testimony that he terminated Langford without talking to her about these alleged reasons for the termination. He told Langford only that there had been a breach of trust and confidence.

Defendant Crawford offered the Chief Clerk job to Pickens without advertising the job, or otherwise taking applications.  He called her the same day Langford was fired and asked her to come to work the next day. Pickens accepted the job and is currently the Chief Clerk.

Defendant Crawford also hired Felicia Williams, an African-American female. Williams had worked on his campaign and registered people to vote.  The position was not advertised or posted.  Williams was hired to replace Barrett.

Defendant Crawford never discussed Langford's job duties or job performance with her after he took office.  The Hale County Commission and Hale County never told Langford that she was failing to perform her job in a satisfactory manner or that she had violated any work policies or standards.   Defendant Crawford's written notice of termination, which he gave to Langford the day after she was orally terminated, did not provide any reason for the termination.

On March 22, 2013, Langford submitted a written grievance to Defendant Crawford challenging her termination.  Her letter states that Crawford refused to provide any reason for his decision and that he did not provide her with any due process prior to terminating her.

The grievance went before the Hale County Commission.  Judge Crawford sits as the Chairman of the County Commission.  The Commission voted to uphold Judge Crawford's decision. They did not have a hearing or give Langford an opportunity to respond.  After the

Commission considered the grievance, a Personnel Review Board was formed that considered the grievance.  The decision was upheld.

IV. Conclusions of law

A. Proper Defendants in this action

Defendants argue that Judge Crawford in his official and individual capacity is the only proper defendant. They assert that the Hale County Commission and Hale County should be dismissed. Count VII, alleging retaliation under Section 1981 was brought solely against Hale County and the Hale County Commission.  The remaining counts are brought against all defendants.

The first question to resolve is who is the proper defendant for each claim.   Langford has made claims against Judge Crawford (in his official capacity and individual capacity), against the Hale County Commission, and against Hale County.   A review of each of these entities and how they relate to each other is necessary.

First, it is clear the probate judge of Hale County is a county official.  *Hawkins v. Jefferson Count*y, 233 Ala. 49, 169 So. 720 (1936).  However, the structure of the office of probate judge is not uniform throughout Alabama counties.[6]   In some counties, probate judges are compensated through fees generated by the probate office.  *See Barbour County Comm'n v. Employees Of Barbour County Sheriff's Dep't,* 566 So. 2d 493, 497-98 (Ala. 1990) ("Judge of

---

[6]  For example, in Franklin County, Alabama, by statute, the judge of probate may appoint one or more clerks to assist the judge "in the performance of his or her duties." Ala. Code § 45-30-240. Clerks appointed under this statute "serve at the pleasure" of the probate judge, but they are "paid a salary to be fixed by the county commission" and paid from the "county general fund." *Id*.  And, the county commission may increase the number of clerks in the office "when in the judgment of the commission that a need exists." *Id.*  Contrast this with Winston County. As of 2013, the Judge of Probate receives a salary from the county general fund and the Winston County Commission provides for the operating expenses of the office.  The fees, commissions, etc., collected by Probate Judge are paid to the general fund of Winston County. Ala. Const. Winston County § 4.50.

Probate is still on the fee system and pays his own employees and thus those employees, with the exception of the Chief Clerk in the Clayton Office, are not employees of the Barbour County Commission.")  In this situation, the probate judge may hire, and pay at his own expense, the clerks in his office.  Ala. Code. 12-13-40(4) ("The Probate Judge shall have the authority… to employ, at his own expense a chief clerk and such other clerks as he deems necessary, for whose official acts he shall be responsible).

In other counties, like Hale County, the probate judge is compensated on a salary basis and the Hale County Commission provides the employees that the Commission considers necessary.  Ala. Const. Hale County Sec. 5 (Amendment 481) (The governing body of Hale county shall provide the judge of probate with such office personnel, clerks, [and] deputies… as such governing body may consider necessary for the proper and efficient conduct of his office.")  Also, all fees generated by the probate office are paid into the general fund of Hale County.  *Id*.  Thus, in Hale County, employees of the probate office that are compensated by the County, are ultimately employed at the discretion of the County Commission.

Langford was paid by the Hale County Commission and her job was authorized by the Commission.  The Probate Judge did not pay Langford, nor was she paid directly by the fees generated by the probate office.  Moreover, when Langford started her job, she was provided with a copy of the Hale County Personnel Policy. (Doc. 31-3)

This Policy contains the "Personnel Policy Statements of the County Commission of Hale County" and the "Personnel Rules and Regulations Hale County, Alabama". (Doc. 31-3, p. 5, p. 9-25)  The Rules and Regulations include a Grievance Procedure by which Langford could grieve her termination up to the County Commission.  According to the Policy, the County Commission would ultimately affirm, modify or reject the recommendation of the Personnel

9

Review Board. (Doc. 31-3, p. 11-12)

    1. Title VII claim

    In Count IV, Langford alleges that the "Defendants" discriminated against her on basis of race in violation of Title VII.  (Doc. 1, p. 10-11)  Under Title VII only the employer can be sued. *Powell v. American Remediation & Environmental, Inc.*, - - - Fed. Appx. - - -, 2015 WL 4079471, *3 (11th Cir. 2015) ("The District Court and the parties overlooked the fact that '[i]ndividual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act."") (citing *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (per curiam)). Having determined that the County Commission was Langford's employer, a Title VII claim can only be maintained against the County Commission.

    2. Section 1983 claims

    Langford's remaining claims are brought pursuant to 42 U.S.C. § 1983.  Section 1983 claims can be alleged against Judge Crawford, individually and in his official capacity, for any unconstitutional acts that he committed against Langford.  However, Judge Crawford's acts do not necessarily implicate the County Commission.   This is because Judge Crawford had not been delegated final decision making authority on termination of probate clerks.  Specifically, the Personnel Rules and Regulations provide a Grievance Procedure, Step Five of which brings the matter to the County Commission for final determination.  Thus, Judge Crawford was not the final policy maker as to terminating Langford. *Johnson v. Waters*, 970 F. Supp. 991, 1004 (M.D. Ala. 1997) ("Thus, since the policies and practices of Bullock County provides for review of a county official's decision to terminate an employee, the court finds that [Judge] Waters cannot be deemed the final policymaking authority for the county in that area of personnel practices").

However, such claims can be maintained against the County Commission "if the County Commission itself terminated [Langford] in violation of her constitutional rights by ratifying the decision to terminate her in the face of evidence that the basis for that decision violated plaintiff's constitutional rights." *Johnson*, 970 F. Supp. at 1004-1005 (citing *St Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926 (1988); *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 998 (11th Cir.1990)).  Langford argues that the County Commission "rubber stamped" Judge Crawford's unlawful decision to terminate her on basis of race, the exercise of her First Amendment rights, and in violation of the Due Process Clause.  *Garvie v. City of Ft. Walton Beach, Fla.*  366 F.3d 1186, 1189 (11th Cir. 2004) ("[R]atification by the authorized policymakers of a subordinate's reasoning and decision is chargeable to the municipality because their decision is final.") (citation and internal quotations omitted).   As set forth herein, there are questions of fact remaining as to at least some of Langford's claims brought pursuant to § 1983.  Therefore, the County Commission is a proper defendant.

As to defendant Hale County, Langford has failed to state any claim against the County that is not redundant of her claim against Judge Crawford in his official capacity or the County Commission.  Thus, Hale County is dismissed.

B. Count I alleging violations of the Due Process Clause of the Fourteenth Amendment

Langford alleges that she had a constitutionally protected property interest in her employment but she was terminated without notice or an opportunity to be heard on her grievance to the County Commission. (Doc. 1)[7]

1. Law of the case doctrine

---

[7] Langford also alleges that the Personnel Policy is deficient because it does not delineate her procedural due process rights.  This allegation fails to state a separate claim.  The Constitution requires that due process be provided, not that the procedure be provided in a written policy.

The parties have now filed cross summary judgment motions as to Count I.  As an initial consideration, the parties both make arguments based on their interpretation of the order denying in part Defendants' motion to dismiss. (Doc. 17) Langford argues that the law-of-the-case doctrine applies and the Court has already decided that the County's Personnel Policy created a binding unilateral contract sufficient to give her a property interest in employment.

The Court's previous findings as to the sufficiency of the Personnel Policy to create a property interest in employment, Langford's pre-termination due process rights, and her status as an employee subject to the merit system, were made for purposes of the motion to dismiss. (Doc. 17, p. 10, "The Court finds that, for purposes of this Motion, . . .")  No final judgment has been entered.  Therefore, this Court has "the discretion and authority to review its prior rulings and orders and the law of the case doctrine [does] not apply." *Oliver v. Orange County, Fla.,* 456 Fed. Appx. 815, 819 (11th Cir. 2012).

Importantly, the law-of-the-case doctrine most often only applies when there has been an <u>appellate</u> decision. *This That And The Other Gift And Tobacco, Inc. v. Cobb County, Ga*., 439 F.3d 1275, 1283-1284 (11th Cir. 2006) ("Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an <u>appellate</u> court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") (quoting *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir.1990) (internal quotation marks and citation omitted) (underlining added); *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 253 F.3d 576, 582 (11th Cir. 2001) ("Generally, the law of the case doctrine requires a court to follow what has been explicitly or by necessary implication decided by a prior <u>appellate</u> decision.") (underlining added); *Baumer v. United States,* 685 F.2d 1318,1320 (11th Cir. 1982) ("Under principles of law of the case, a decision of a legal issue or issues by an <u>appellate</u> court . . . must be followed in all subsequent

proceedings in the same case in the trial court or on a later appeal in the appellate court" unless

certain conditions exist.) (underlining added).  Thus, Langford's arguments regarding the law-of-

the-case doctrine are without merit.

      2. <u>Due process under the Fourteenth Amendment</u>

      Langford argues that she is entitled to judgment as a matter of law on her claim that

Defendants violated her right to Due Process under the Fourteenth Amendment. Langford argues

that under state law the Hale County Personnel Policy manual contains language sufficient to

establish a binding unilateral contract and that she received a copy of the Policy.  Thus, she

argues that as a permanent, full time employee, as provided for in the Policy, she had a property

interest in her employment and could not be terminated without notice and an opportunity to be

heard.  She argues that there is no dispute of fact that when Judge Crawford terminated her, she

did not have notice and an opportunity to respond, and therefore, she was deprived of minimal

pre-termination due process rights. She argues that when the County Commission rubber-

stamped his decision, her due process rights were also violated.

      Defendants respond that there is a genuine issue of fact as to whether Langford was

covered by the Personnel Policy and therefore, her motion for summary judgment should be

denied.[8]  However, as explained *supra,* as a matter of law Langford was an employee of the

County Commission. Thus, the Personnel Policy was applicable to her.

      The United States Supreme Court has noted that the "Fourteenth Amendment's

procedural protection of property is a safeguard of the security of interests that a person has

---

[8] Defendants also argue that Langford does not have a protectable property interest because
Judge Avery hired her and she did not go through an application process as contemplated in the
Personnel Policy.  However, Defendants do not explain how this would preclude Langford from
any contracts rights created under the Personnel Policy.  Whether Judge Avery correctly
followed protocol for selecting employees is not the issue.

already acquired in specific benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). The Court held that "[p]roperty interests [] are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577.   In that regard, "State law defines the parameters of a plaintiff's property interest for section 1983 purposes. 'Whether state law has created a property interest is a legal question for the court to decide.'" *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1559 (11th Cir. 1991) (citation omitted).

The Alabama Supreme Court has stated the following:

> It has long been the law in Alabama that employment is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. "[A]bsent an agreement on a definite term, any employment is considered to be 'at-will,' and may be terminated by either party, with or without cause or justification." *Clark v. America's First Credit Union*, 585 So.2d 1367, 1369 (Ala. 1991). Furthermore, employees in Alabama bear a heavy burden of proof to establish that an employment relationship is other than "at will." The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied. *Alabama Mills, Inc. v. Smith*, 237 Ala. 296, 301, 186 So. 699, 704 (1939).

*Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 310-11 (Ala. 1992), *cert. denied*, 507 U.S. 1031 (1993).

In regards to determining the status of employment, in *Hoffman-La Roche, Inc. v. Campbell*, the Alabama Supreme Court explained as follows:

> [t]hree elements must be shown to establish that an employment contract is one other than one terminable at will: (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and

(3) that the employee provided substantial consideration for the contract separate
from the services to be rendered.

512 So. 2d 725, 728 (Ala. 1987) (citations omitted).  The *Hoffman-LaRoche* Court went on to

hold that

> we see no reason why a policy contained in an employee manual issued to an
> employee cannot become a binding promise once it is accepted by the employee
> through his continuing to work when he is not required to do so. Such a
> performance clearly provides any consideration necessary to the contract.  The
> fact that the promise is communicated to the employee through the medium of a
> handbook, rather than by some other means, is simply of no consequence.
> . . .
>
> In summary, we find that the language contained in a handbook can be sufficient
> to constitute an offer to create a binding unilateral contract. The existence of such
> a contract is determined by applying the following analysis to the facts of each
> case: First, the language contained in the handbook must be examined to see if it
> is specific enough to constitute an offer. Second, the offer must have been
> communicated to the employee by issuance of the handbook, or otherwise. Third,
> the employee must have accepted the offer by retaining employment after he has
> become generally aware of the offer. His actual performance supplies the
> necessary consideration.

*Hoffman-La Roche*, 512 So. 2d at 734-735.

As to the language contained in the Hale County Personnel Policy, the introduction states

as follows:

> Whereas: The Hale County Commission desires to provide quality services to the
> citizens of Hale County; and
>
> Whereas: The Commission is dedicated to providing equal opportunity for
> employment to all qualified applicants and fair treatment for all employees; and
>
> Whereas: The Commission believes that continuance of employment with the
> County should be based on satisfactory performance of duties;
>
> Now, Therefore, Be It Resolved that the County Commission of Hale County
> does hereby adopt and proclaim the following personnel policies:

(Doc. 31-3, p. 5)

The Personnel Policy also contains the following relevant provisions:

"Each employee will be given a copy of his/her job description and an Employees Handbook, outlining all rules, regulations, policies, conditions, and benefits of County Employee employment. Both employee and management/supervisory staff will be required to know and productively implement all provisions and conditions of employment."

(Doc. 31-3, p. 6, Section II, Conditions of Employment, ¶ D)

"All employees have the right to discuss any and all matters relating to their employment and/or their personal welfare with their supervisors. They may communicate with their supervisors, either orally or in writing, and may be accompanied by representation of their choice. When disagreement over the solution of a problem cannot be resolved, **permanent employees** shall have access, through a grievance procedure, to successively higher levels of management. Management/supervisory personnel will produce resolution of problems and grievances, attempting always to ensure every permanent employee the right to due process under the grievance procedure."

(Doc. 31-3, p. 6, Section II, ¶ F) (emphasis added).

"The County believes that the goal of productivity in county employment will be served by establishing a probationary period for new employees during which each employee is oriented to all the conditions and requirements of county work and during which his/her performance is closely supervised and monitored to assure the attainment of the minimum performance requirements for the job/position. Probationary employees shall share in all the benefits of employment with the county except that dismissals for cause during the probationary period shall not be grievable."

(Doc. 31-3, p. 7, Section II, ¶ I)

The "Personnel Rules and Regulations", which govern the "application of the policies contained" in the "Personnel Policy Statements of the County Commission of Hale County", provides for "Disciplinary Action" and sets forth as follows:

"Employees are expected to attend work regularly, arriving in time and spending the assigned time in productive work efforts. They are also expected to deal honestly, fairly and efficiently with the County's resources and citizens. When employees cannot or will not conform to the Personnel Rules and Regulations as outlined herein, they may be disciplined in the following ways:

      1. <u>Verbal Reprimand</u>: a notification of which will be placed in the personnel file;

      2. <u>Written Reprimand</u>: a copy will be placed in the personnel file. The employee will also be given a copy of the written reprimand;

      3. <u>Suspension</u>: for up to ten (10) consecutive working days. Suspensions of an aggregate of twenty-five (25) days in any calendar year (dating from the first suspension) will result in termination. Suspensions are without pay.

      4. <u>Demotion and Reduction in Pay</u>;

      5. <u>Transfer</u>;

      6. <u>Termination</u>;

Steps 4, 5 and 6 shall be only with the concurrence of the County Engineer. An appeal can be made following the steps in grievance procedure.

(Doc. 31-3, p. 9-10)

      The Personnel Rules and Regulations set out a four-step "Grievance Procedure". A non-probationary employee may first discuss the incident with the immediate supervisor (Step One). Then the employee may file a written complaint with the department head (Step Two). Next, the employee may request that the Personnel Officer notify the Personnel Review Board. The Board should meet within ten (10) days and hear the grievance (Step Three).  The Personnel Review Board shall submit a recommendation in writing to the County Commission and the County Commission may affirm, modify or reject the recommendation (Step Four) (Doc. 31-3, p. 11-12).

There is no dispute of fact that Langford received a copy of the Hale County Personnel Policy from her employer and that she continued to work as Probate Chief Clerk until Judge Crawford terminated her employment. *Hoffman-La Roche*, 512 So. 2d at 736-37.  Nor is there a dispute that Judge Avery knew that Langford gave up employment to accept the job as Chief Clerk. Under Alabama law, knowledge by the employer 'that the person being employed then has employment, and that he is giving it up to engage in his new work under the new contract' is valuable consideration." *Scott v. Lane*, 409 So. 2d 791, 794 (Ala. 1982). [9]

The issue that remains is whether the language of the Personnel Policy is "specific enough to constitute an offer." *Id.* And then, whether Langford has a vested property right as a public employee such that the Defendants erred when they failed pre-termination due process.

The Court finds that the language of the Personnel Policy is "specific enough to constitute an offer." *Id*.  The introductory paragraphs to the Policy Statements specifically state that the Commission is dedicated to providing "fair treatment for all employees" and that "continuance of employment with the County should be based on satisfactory performance of duties" as part of the underpinnings of the Policy. (Doc. 31-3, p. 5) The policy contained no disclaimers or reservations to deviate from he policy provisions therein. *Cf. Harper v. Winston County,* 892 So. 2d 346, 351-352 (Ala. 2004) (finding that the introduction to the handbook "repeatedly states" that it is a "guide" for employees and the statement that conditions "may vary slightly with the occasion as all problems vary" was sufficient to be "express disclaimers reserving to the County the right to deviate from the policies stated in the handbook" and thus did not create an employment contract).

---

[9] The Defendants argue that there is an issue of fact as to whether this constitutes substantial consideration.  However, it appears that under *Scott v. Lane,* foregoing former employment is adequate consideration as a matter of law.

Importantly, the Personnel Policy clearly refers to employees, after a probationary period, as permanent employees. (Doc. 31-3, p. 19, XII Probationary Period) ("All new employees are required to serve a satisfactory three-months' probationary period before attaining permanent status in the county service.")

Moreover, the Eleventh Circuit has explained that "the existence of procedural protections can-at least in the absence of circumstances indicating the contrary-suggest the existence of substantive restrictions on the employer's discretion to discharge." *Green v. City of Hamilton, Housing Authority*, 937 F. 2d 1561, 1566, n. 2 (11th Cir. 1991).  In regard to substantive restrictions, the Personnel Rules and Regulations set out a hierarchy of disciplinary actions and a list of actions that are grounds for disciplinary action.  (Doc. 31-3, p. 13-14)  The Personnel Rules and Regulations provide that demotion and reduction in pay, transfer and termination "shall be only with the concurrence of the County Engineer" and that an appeal can be made by way of the Grievance Procedure.  (Doc. 31-2, p. 13)  In the end, "if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook." *Hoffman-La Roche*, 512 So.2d at 734. Hale County Commission failed to do so.

 Defendants also argue that the Personnel Policy and Personnel Rules and Regulations do not apply to supervisory employees like Langford.  The Court disagrees.  The plain language indicates that all employees have certain rights, benefits and privileges of county employment, except that probationary employees "do not have the right of access to the grievance procedure." (Doc. 31-3, p. 19)   Had the Hale County Commission intended to exclude all supervisory employees from the Personnel Rules and Regulations it could have done so.

Upon consideration of the foregoing, the Court finds as a matter of law that under

Alabama law, Langford has a protected property interest in her employment. *Mackenzie*, 920 F.2d at 1559 ("Whether state law has created a property interest is a legal question for the court to decide.")  The Court further finds that Langford's right to procedural due process has been denied because she did not receive notice and opportunity to be heard before Judge Crawford terminated her employment and the County Commission upheld the termination. *McCoy v. Alabama Dept. of Corrections,* 427 Fed. Appx. 739, 741 (11th Cir. 20111) ("[A] tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  Thus, the employee is entitled to a pre-termination hearing to determine whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.") (quoting *McKinney v. Pate,* 20 F.3d 1550, 1561 (11th Cir.1994) (en banc)) (internal quotations omitted); *Harrison v. Wille,* 132 F.3d 679, 683 -684 (11th Cir. 1998) ("There must be 'some kind of hearing' before termination of an employee with a protected property interest in his employment. The termination of employment is a severe deprivation, although the interest of the sheriff's office in terminating deputies for misconduct is great. . . . The importance of the Plaintiff's property interest makes it necessary to provide some sort of pretermination hearing, which includes notice and an opportunity to be heard.") (quoting *Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 542-543 (1985)).

Accordingly, judgment is entered in favor of Langford as to her claim for denial of her due process rights under the Fourteenth Amendment against Judge Langford in his official capacity and against the Hale County Commission.  The issue of damages is carried to trial.

3. Qualified immunity

Langford also sues Judge Crawford in his individual capacity and Crawford has claimed

qualified immunity.  The Eleventh Circuit has set forth the following the analysis for applying

qualified immunity:

> "The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (internal quotation marks omitted). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. ----, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). "[Q]ualified immunity is a privilege that provides 'an *immunity from suit* rather than a mere defense to liability.' " *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)) . . .
>
> "To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority" when the alleged violation occurred. *Id.* at 1325. "If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "[T]he plaintiff must ... show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* "The judges of the district courts and the courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."*Pearson*, 129 S. Ct. at 818.

*Townsend v. Jefferson County,* 601 F.3d 1152, 1157-58 (11th Cir. 2010). For this inquiry, a right

is "clearly established" if "(1) case law with indistinguishable facts clearly establish[es] the

constitutional right; (2) a broad statement of principle within the Constitution, statute, or case

law [ ] clearly establishes a constitutional right; or (3)[the] conduct [was] so egregious that a

constitutional right was clearly violated, even in the total absence of case law." *Maddox v.

Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (quotation marks and citation omitted). "In order

to overcome summary judgment because of qualified immunity, the facts in dispute must raise a

genuine issue of fact material to the determination of the underlying issue."  *Terrell v. Smith*, 668

F.3d 1244, 1250 (11th Cir. 2012) (quotation omitted).

Langford concedes that Defendant Crawford was acting within his discretionary authority. However, she argues he is not entitled to qualified immunity in his individual capacity because he admitted he did not provide Langford with any pre-termination procedures to protect her property interest. Citing *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. at 546, Langford argues that it is clearly established law that a public employee with a property interest in their employment must be given notice and a hearing prior to being terminated, and therefore, Defendant Crawford is not entitled to qualified immunity.

Defendants argue that Judge Crawford reasonably believed that Langford was an at-will employee because of the nature of her job. Defendants assert that it is common for supervisory positions to be considered at-will, or exempt from merit systems, and point to the absence of a position description specifying the role of chief clerk in the Personnel Policy. They also submit that Judge Avery hired Langford without Langford applying to the County, as further evidence to support Judge Crawford's beliefs.

The Court finds that it was not clearly established at the time of Judge Crawford's decision that the Hale County Probate Chief Clerk had a protected property interest in employment. " '[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.' " *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted)). It was objectively reasonable for Judge Crawford to believe that Langford was an at-will employee and not subject to the personnel policy, especially in light of the fact that in the past it appeared that the Chief

Clerk served at the pleasure of the Probate Judge.  Moreover, it appears that it was and continues to be a practice that the Probate clerks are hired without regard to the application procedure set forth by the County Commission.   Accordingly, Judge Crawford's motion for summary judgment based on qualified immunity in his individual capacity is granted as to Count I.

C. Counts II, IV and VI alleging discrimination on basis of race

Langford brings three claims based on race discrimination arising from the same set of facts – Count II alleging violation of her 14th Amendment Equal Protection rights brought pursuant to Section 1983, Count IV alleging race-based employment discrimination under Title VII, and Count VI for race discrimination under 42 U.S.C. § 1981.

1. Discrimination on basis of race

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her]s compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Blow v. Virginia College,* - - - Fed. Appx. - - -, 2015 WL 4503337, *2 (11th Cir. 2015).  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny any person within its jurisdiction the equal protection of the law." U.S. CONST. AMEND. XIV, § 1.  "Section 1983 provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions." *Adams v. Fulton County, Ga.,* 397 Fed. Appx. 611, 612 (11th Cir. 2010).

Claims of race discrimination brought under Title VII, Section 1981, and the Equal Protection Clause, all require proof of intentional discrimination.  *Smith v. Governor for*

*Alabama*, 562 Fed. Appx. 806, 814 (11th Cir. 2014). ("Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *Ross v. Jefferson County Dept. of Health,* 701 F.3d 655, 661 (11th Cir. 2012) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (addressing a Title VII claim of race discrimination); *Goia v. CitiFinancial Auto*, 499 Fed. Appx. 930, 936 n.2 (11th Cir. 2012) ("for a successful claim under § 1981, a plaintiff must show that the defendant intentionally discriminated against him with regard to minority status in making a contract") (citation omitted).  "This court analyzes Title VII and §§ 1981 and 1983 claims under the same standards." *McMillan v. Fulton County, Georgia,* 352 Fed. Appx. 329, 330, n.1 (11th Cir. 2009) (citations omitted); *Lindsey v. Board of School Com'rs of Mobile County,* 491 Fed. Appx. 8, 9-10 (11th Cir.  2012) ("If a Title VII disparate treatment claim is based on the same facts as a § 1981 or § 1983 claim, the analysis is the same under all theories of liability, and the claims need not be analyzed separately."); *Baker v. Birmingham Bd. of Ed.*, 531 F.3d 1336, 1337 (11th Cir. 2008) ("Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or [sic] allegations of § 1981 violations must be brought pursuant to § 1983.").

Langford relies on circumstantial evidence to support her race discrimination claim. In that circumstance, the *McDonnell Douglas* framework applies. *Lindsey,* 491 Fed. Appx. at 9-10. Under *McDonnell Douglas,* Langford carries the initial burden of establishing a prima facie case of discrimination.[10] *Id.*   As to her prima facie burden, Defendants concede for purpose of

---

[10]  To make out a prima facie case of racial discrimination under Title VII and Section 1983, Langford must show that she (1) belongs to a protected class, (2) was qualified for the job, (3) suffered adverse employment action, and (4) similarly situated employees outside her class were treated more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir.2008).

summary judgment that Langford could meet this burden. (Doc. 29, p. 8). [11]

The burden of production then shifts to Defendants to proffer a legitimate, non-discriminatory reason for the termination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). To do so, Defendants must introduce evidence of "'some legitimate, nondiscriminatory reason' for its employment decision." *Kidd v. Mando American Corp.,* 731 F.3d 1196, 1202 (11th Cir.2013) "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs*, 106 F.3d at 1528 (citation omitted). This is a burden of production, not persuasion, and is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir.1994).

The Defendants have offered non-discriminatory reasons for Langford's termination; Langford was untrustworthy and was half-heartedly performing her job. Specifically, Defendants argue that Langford was terminated because "her actions made it impossible for Judge Crawford to have confidence in her willingness to carry out her duties as his chief clerk." (Doc. 29, p. 9) Defendants argue that even though she "campaigned against him, Judge Crawford had attempted to build a good working relationship" with Langford during the two months she was employed, but Langford did the "bare minimum" of work and maintained a

---

[11] Defendants argue that Langford's Title VII claim is subject to the personal staff exemption. As provided in the definition of "employee," Title VII establishes four distinct exclusions: (1) persons who are elected to public office in any state or political subdivision by the qualified voters; (2) persons who are chosen by such elected officials to be on their personal staff; (3) persons appointed by such officials on the policy-making level; and (4) such officials' immediate advisors with respect to the exercise of the constitutional or legal powers of their offices." 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f). Defendants appear to argue the second and fourth exception. Neither apply. Judge Crawford did not choose Langford to be on his personal staff. As the parties have pointed out, she was hired by Judge Avery and is a County employee. Also, there is no evidence that she advised Judge Crawford regarding the "exercise of the constitutional or legal powers of" his office. *Id.*

"sullen demeanor". *Id*.  Defendants also argue that during these two months, Judge Crawford developed "serious concerns" about Langford's "actions during the period of time between Judge Avery's retirement and Judge Crawford's appointment." *Id*.  They assert that the "final straw" was Langford's failure to inform Judge Crawford that a subordinate clerk told Langford that she was going to resign and that the "totality of the circumstances led Judge Crawford to believe that [Langford] could not be trusted." *Id*.

Defendants have met their burden, thus "the presumption raised by the prima facie case is rebutted" *Kidd*, 731 F.3d at 1202 (citations omitted) and the burden of production shifts back to Langford to offer evidence that the proffered legitimate reason given by the Defendants is a pretext for illegal discrimination. *Id*. Langford argues that viewing the facts in the light most favorable to her, the following facts demonstrate that she was fired because of race:

> Plaintiff is white.
>
> Defendant Crawford and the majority of the Hale County Commission at the time of her termination were African-American.
>
> Prior to her termination, Plaintiff had performed all of her duties in a satisfactory manner.
>
> Prior to her termination, neither Defendant Crawford nor any member of the Hale County Commission complained about her job performance or the manner in which she performed her job.
>
> None of the reasons set forth by the Defendants in their Motion for Summary Judgment were given as reasons for the Plaintiff's termination at the time she was terminated. [12]
>
> When given an opportunity to place in writing the reasons why he fired the Plaintiff, Defendant Crawford wrote the following (quoted in its entirety):

---

[12]  Defendant Crawford states that Langford was told on the day she was terminated that her termination was caused by a "breach of trust and confidence." (Doc. 42, p. 3, citing Crawford's deposition at 105:4-12 (Doc. 42-2,p. 5)) ("I asked Ms. Langford and Ms. Holliday – which is my other clerk, Tammy, - to come into my office where I informed Ms. Langford of her termination of employment which was due to a breach of trust and confidence.")

"This memo is to inform you of the termination of your employment as the Chief Clerk in the Probate office of Hale County, effective March 15, 2013." (Crawford dep. at Ex. 2.)

Defendant Crawford was training the Plaintiff's African-American replacement in Greene County in February before the pretext for her termination – that Plaintiff was informed that Laura Barrett was leaving and failed to inform Defendant Crawford -- arose.[13]

Hale County Commissioner David Rogers – a member of the Commission at the time of the Plaintiff's termination – testified that it is his belief the Plaintiff was fired because she was white. [14]

Defendant Crawford belonged to an organization that backed *only* African-American candidates.

Following his election, Defendant Crawford and the Commission set about purging white employees and replacing them with African-Americans, including the Plaintiff, the County Administrator, and the County Attorney.

The African-American members of the Commission, whom together with Defendant Crawford constituted a majority on the Commission -- ratified and followed in lock-step with Defendant Crawford's actions regarding white employees.

The African-American members of the Commission were also supported by Campaign 2000 and Beyond.

(Doc. 43, p. 15-16 (italics in original).

From this the Court must determine if there is sufficient evidence for a reasonable fact-finder to find that Defendant's proffered reasons did not truly motivate the decision to terminate Langford. *Combs*, 106 F.3d at 1529.  ("[A] plaintiff is entitled to survive summary judgment ... if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action."). To prevail, Langford must show that "*both* the reason [for termination] are false, *and* that discrimination was the real

---

[13] The Court has not considered the allegation because there was no admissible evidence submitted in support. Langford's testimony as to what Pickens' said would be hearsay at trial.

[14]  Defendants object to Rogers' testimony on basis that his testimony as to Judge Crawford's motivation is irrelevant and based on his opinions and limited personal knowledge regarding the facts surrounding Langford's termination. (Doc. 42, p. 2; Doc. 47. p. 2)  The Court agrees.

reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2745 (1993) (italics in original). She may do so by showing that the reasons are implausible or inconsistent to the degree that a reasonable fact-finder would find them unworthy of credence. *Manigault v. Commissioner of Social Security,* - - - Fed. Appx. - - -, 2015 WL 1782063, *4 (11th Cir. 2015). "In some cases, a plaintiff may demonstrate pretext by disputing the defendant's factual allegations and questioning its sincere belief that those facts existed at the time it made the employment decision." *Wellons v. Miami Dade County,* - -- Fed. Appx. - - -, 2015 WL 1936552, *4 (11th Cir. 2015).

Also it should be noted that " establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. . . . . Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (citation omitted).

Based on this evidence, the Court finds that there are genuine issues of fact that remain for trial. Accordingly, Defendants' motion for summary judgment as to Langford's claims alleging discrimination on basis of race is denied. Langford has met her burden of production to offer evidence that the proffered legitimate reasons given by the Defendants were a pretext for illegal discrimination. *Kidd*, 731 F.3d at 1202 (citations omitted).

2. Qualified immunity

Judge Crawford argues that he is entitled to qualified immunity in his individual capacity as to Langford's claims brought pursuant to Section 1983 based on race discrimination (Counts II and VI).   He argues that there is no actual evidence to support Langford's claim that her termination was linked to race.

Qualified immunity allows "officials to carry out discretionary duties without the chilling fear of personal liability." *Speight v. Griggs,* - - -  Fed. Appx. - - -, 2015 WL 4759988, *3 (11th Cir. 2015) (citing *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009)).  Officials are entitled to qualified immunity if they were acting within their discretionary authority and do not violate a clearly established constitutional right. *Id.* There is no dispute that Judge Crawford was acting within his discretionary authority when he terminated Langford's employment.

However, the Court has determined that Langford has produced sufficient evidence for a jury to find that the proffered legitimate reasons were a pretext for race discrimination.  Because "[t]he right to be free from racial discrimination in the employment context is clearly established",  Judge Crawford's motion is denied. *Jolivette v. Arrowood,* 180 Fed. Appx. 883, 886, (11th Cir. 2006) (finding that "no reasonable official could believe that it is lawful to discriminate against an employee on basis of race in the way that Jolivette alleges."); *see Gardner v. City of Camilla, Ga.*, 186 Fed. Appx. 860, 864 (11th Cir. 2006) ("The district court denied Scott qualified immunity as to the race discrimination claim with respect to this argument because it found a genuine issue of material fact as to whether the proffered legitimate reasons were in fact pretext for racial discrimination. Thus, the district court, in essence, found that the record did not indisputably establish the existence of a nondiscriminatory motive. As such, the district court did not err in its qualified immunity analysis as to that issue. ")

D. Count III alleging violations of the First Amendment

1. First Amendment violations

Langford claims that she was fired in violation of her First Amendment rights.

Specifically, she alleges she was fired in retaliation for her speech as a private citizen, which

resulted in a voter fraud investigation in 2004, and because of her political support of Judge

Avery. (Doc. 1, p. 9-10)

In *Leslie v. Hancock County Bd. of Educ.*, the Eleventh Circuit discussed the law relative

to a claim of speech protected under the First Amendment. The Eleventh Circuit stated as

follows:

> "The law is well established that a state employee may not be discharged for
> speech protected under the First Amendment," *Vila v. Padron*, 484 F.3d 1334,
> 1339 (11th Cir.2007), but "a public employee's right to freedom of speech is not
> absolute," *id*. "To set forth a claim of retaliation, a public employee must show:
> (1) she was speaking as a citizen on a matter of public concern; (2) her interests as
> a citizen outweighed the interests of the State as an employer; and (3) the speech
> played a substantial or motivating role in the adverse employment action." Id. "If
> the plaintiff establishes these elements, the burden shifts to the defendant to prove
> it would have made the same adverse employment decision absent the employee's
> speech." *Id.*

> To determine whether an employee's interest as a citizen outweighed the interests
> of the state as an employer, we apply the balancing test defined by the Supreme
> Court in *Pickering*. This test seeks "to arrive at a balance between the interests of
> the [public employee], as a citizen, in commenting upon matters of public concern
> and the interest of the State, as an employer, in promoting the efficiency of public
> services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct.
> at 1734–35. The Supreme Court has instructed that "the manner, time, and place
> of the employee's expression" and "the context in which the dispute arose" are
> relevant to the *Pickering* balance. *Rankin v. McPherson*, 483 U.S. 378, 388, 107
> S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). The Court has also "recognized as
> pertinent considerations whether the statement impairs discipline by superiors or
> harmony among co-workers, has a detrimental impact on close working
> relationships for which personal loyalty and confidence are necessary, or impedes
> the performance of the speaker's duties or interferes with the regular operation of

the enterprise." *Id*.

720 F. 3d at 1346.

As to Langford's claim that she was retaliated against for her political association with

former Probate Judge Avery,

> [t]he Supreme Court has developed a different, but related, approach to resolve
> complaints of retaliation in violation of the First Amendment based on political
> affiliation or belief in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d
> 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574
> (1980). . . . In *Elrod*, the Court held that a "nonpolicymaking, nonconfidential
> government employee" cannot "be discharged or threatened with discharge from a
> job that he is satisfactorily performing upon the sole ground of his political
> beliefs." 427 U.S. at 375, 96 S. Ct. at 2691 (Stewart, J., joined by Blackmun, J.,
> concurring). The Supreme Court later clarified, in *Branti*, that "the ultimate
> inquiry is not whether the label 'policymaker' or 'confidential' fits a particular
> position; rather, the question is whether the hiring authority can demonstrate that
> [political] affiliation is an appropriate requirement for the effective performance
> of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295. But the Court
> has continued to consider whether an employee holds a policymaking or
> confidential position to determine whether the employee may be dismissed or
> demoted because of his political beliefs. *Id.* at 519–20, 100 S.Ct. at 1295.
> Employees who serve in these positions can be terminated on the basis of political
> affiliation or belief because the government has "a compelling interest in
> infringing [their] First Amendment rights."

720 F. 3d at 1346-1347 (some internal citations omitted).

a. Confidential employee defense

Defendants first argue that Langford is a confidential employee, and therefore, not a

public employee with the protections of the First Amendment for her speech regarding the 2004

voting investigation and for her association or affiliation with Judge Avery in the primary

election.  Specifically, Defendants argue that Langford's position as Chief Clerk for a Probate

Judge, a position requiring a high degree of closeness, cooperation, and trust makes her a

confidential employee.  Defendants point to the scope of the Chief Clerk's duties and authority

described in Ala. Code §§ 12-13-13, 12-13-14, and 12-13-15, the fact that she worked directly with Judge Crawford, the "realities" of the position in Hale County, and the job duties as testified by Langford and the statutory source of her authority, and argue that these facts establish that she is a confidential employee.

Langford contends that she was not a confidential employee. Langford asserts that she was not the "chief clerk" as set forth in the Ala. Code §§ 12-13-13, 12-13-14, and 12-13-15, because she was paid by the County Commission, not Judge Crawford. Langford also argues that she is not Judge Crawford's alter ego, that she had no role with respect to Judge Crawford's position as Chair of the County Commission and she had no authority to hire, fire, or discipline other probate clerks or write policy. [15]

The Eleventh Circuit recognized that "[o]rdinarily the determination that an employee is a policymaking or confidential employee is a question of fact. . . .  But we have applied a categorical approach based on the statutory authority of an employee when the employee is empowered by the relevant state or local law to act as the alter ego of her employer."  720 F. 3d 1338, 1349 (11th Cir. 2013) (citing *Underwood v. Harkins*, 698 F.3d 1335, 1342 (11th Cir.2012)).   "Our predecessor court first concluded that an employee was a policymaker or confidential employee based only on the legal definition of that employee's duties." *Id*., citing *Stegmaier v. Trammell*, 597 F.2d 1027, 1040 (5th Cir.1979)) and citing *Terry v. Cook*, 866 F.2d 373 (11th Cir.1989).

The Eleventh Circuit then stated that it had "recently acknowledged that we apply a

---

[15]  Langford also argues that "the Court has already determined that if the statutes applied, [she] is not a confidential employee." (Doc. 43, p. 21)  Actually, the Court found that the "statutes do not provide support for the Defendant's argument that the chief clerk is the alter ego of the probate judge." (Doc. 17, p. 5)

categorical approach based on state law to determine whether an employee is a confidential employee or policymaker." *Leslie*, 720 F. 3d at 1350 (citing *Underwood*, 698 F. 3d at 1343-1344). The Eleventh Circuit explained that in *Underwood*, "a newly-elected superior court clerk fired a deputy clerk who had run against her in a primary election" and that "[a]fter a review of *Terry* and *Stegmaier*, we held that 'an elected official may dismiss an immediate subordinate for opposing her in an election without violating the First Amendment if the subordinate, under state or local law, has the same duties and powers as the elected official.'" *Id*. at 1350. The Eleventh Circuit "treated the deputy clerk as a policymaking or confidential employee because 'a person holding that position is essentially the legal alter ego of the clerk.'" *Id*. The Eleventh Circuit explained that it had "held that the deputy clerk's authority under state law controlled our analysis: What matters in a case like this one is not what the subordinate actually does on a day-to-day basis, but rather what the subordinate is legally empowered to do under state or local law. In other words, we look at the position in the abstract and at what state or local law allows a person in that position to do, and not at a snapshot of the position as it is being carried out by a given person at a given point in time under a given elected official." *Id.* at 1350-1351. The Eleventh Circuit "stated that the categorical approach made sense because '[t]he fact that an elected official has not given a particular immediate subordinate all of the discretionary or policymaking authority available under state or local law does not prevent that official (or a future one) from changing her mind, or from choosing to expand a subordinate's duties if she is able to hire the subordinate of her choice.'" *Id.* at 1351. Ultimately, the Eleventh Circuit explained that the "key factor in our decisions that apply a categorical approach is that the employee was empowered by law to act as the alter ego of her employer." *Id.* at 1351.

The Court finds the categorical approach based on statutory authority is not determinative

in this action because the statutes outlining the duties and responsibilities of Probate Chief Clerks do not empower Langford "to act as the alter ego" of Judge Crawford. [16]  Specifically, at least three functions that are performed by the Probate Judge cannot be performed by the Chief Clerk "where there is a contest." *See* Ala. Code § 12-13-14(a)(1), (4) and (5).[17] Also, the clerk's duties upon a vacancy in the office of Probate Judge are not the same as those of the Probate Judge.  In that circumstance, the clerk "shall … perform all the duties of that office which he is authorized to perform when there is no vacancy" – in other words, the same limited functions as identified above - and is restricted in handling monies.  As to judicial duties, the Chief Clerk "may" continue cases and proceedings that are pending.  Ala. Code § 12-13-15.

When the categorical approach is not applicable, "[o]rdinarily the determination that an employee is a policymaking or confidential employee is a question of fact." *Leslie,* 720 F. 3d at 1349.  In that regard, Defendants have argued that "it is not necessary that an employee be able to perform all the duties of the elected official to be characterized as confidential or policy-making employee."  (Doc. 47, p. 10)  Defendants argue that the Court should consider factors such as the employee's access to confidential information and the ability to help or hinder the official, whether the employee is empowered to represent the official to the general public,

---

[16]  Ala. Code § 12-13-40 provides the powers of Probate Judges generally, sets out specific acts that they may perform, and culminates with the authority to "exercise such other powers as are or may be conferred on him by law."  Section 5 of Ala. Code 12-13-14(5), gives the Probate Chief Clerk the power to "do all other acts and things and perform all other duties, ministerial and judicial, where there is no contest, that the probate judge may do and perform."  While these are broad powers, they are not co-extensive with those of the Probate Judge.

[17] The Chief Clerk may "issue letters testamentary, of administration and of guardianship, *where there is no contest*. . . . admit wills to probate and record and to pass and allow accounts of executors, administrators and guardians, *where there is no contest* [, and] … do all other acts and things and perform all other duties, ministerial and judicial, *where there is no contest*, that the probate judge may do and perform." Ala. Code § 12-13-14 (emphasis added).

whether the employee holds a visible leadership position such that the public would perceive the employee as responsive to partisan politics, and whether the job requires extensive public contact on the employer's behalf. (Doc. 29, p. 14)

Langford argues that she did not occupy the position of Chief Clerk as identified in the Alabama statutes because she was paid by the County Commission.  She also argues that because she was a County Commission employee, she could not be Judge Crawford's confidential employee because she was under the control of the County Commission.

The Court finds that Langford's argument that because she is a County employee and subject to ultimate control by the County Commission, she cannot be a confidential employee to Judge Crawford is without merit.  While the County Commission may exercise control of salary and benefits, and provide the Hale County Personnel Policy to its employees, the Chief Clerk may still perform functions that would make her a confidential employee.  An issue of fact remains.

Whether Langford is a confidential employee is a factor in determining whether either of Langford's First Amendment claims are viable. Based upon the facts presented, and viewing those facts in the light most favorable to the non-movant Langford, the Court finds that the facts are insufficient to determine as a matter of law that Langford was a confidential employee who was not protected by the First Amendment. Accordingly, summary judgment is denied as to Defendants' argument that Langford is a confidential employee.

b. Causal connection

Langford alleges that there were two specific acts of retaliation – termination of her employment by Judge Crawford and the County Commission's decision to deny her grievance and ratify her termination.  She argues that the retaliation occurred because of her activities in

35

"promoting clean elections" in Hale County (which damaged a "political machine that Defendant

Crawford and the African-American commissioners are part of") and her "direct support of

Judge Avery in the election won by Defendant Crawford." (Doc. 43, 22)

Defendants argue that Langford's "First Amendment speech and association claims must

fail" because she failed to make a causal connection between any protected activity and her

termination.  Defendants argue that Langford's alleged protected speech, the report of voter

fraud in 2004 and the subsequent investigation, was at least three years removed from her

termination in March 2013.  Moreover, they assert that Judge Crawford was working in Iraq

from 2003 until 2005, and the only connection between him and the 2004-2010 investigations is

that the persons involved are African-Americans and involved with certain civil rights groups.

Langford has the burden of establishing a causal connection between her protected

political activity and her discharge.  In that regard, the Eleventh Circuit has explained that

> To state a First Amendment retaliation claim under § 1983, a plaintiff must
> establish the following: (1) his speech or conduct was constitutionally protected;
> (2) the retaliatory conduct of the defendant adversely affected the protected
> speech, in that the retaliation "would likely deter a person of ordinary firmness"
> from engaging in the protected speech; and (3) there is a causal connection
> between the retaliatory conduct and the protected speech.
>
> The causal-connection inquiry asks whether the defendants were subjectively
> motivated to retaliate because the plaintiffs engaged in protected speech.
> Subjective motivation in turn requires that the defendants had actual knowledge
> of the plaintiffs' protected speech, which can be established by circumstantial
> evidence.

*Indigo Room, Inc. v. City of Fort Myers,* 589 Fed. Appx. 938, 947 (11th Cir. 2014) (internal

citations omitted).  "In discussing the third element, whether there is a 'substantial' causal link

between the employee's speech and the adverse employment decision, the Eleventh Circuit stated

that where causation is lacking, a claim of retaliatory discharge fails, and the court need not

consider the other three elements." *Thompson v. Willis,* 2015 WL 3676139, *10 (N.D. Ala. 2015) (citing *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996).

As to the causal link between her protected activity and the alleged retaliatory termination, Langford offers as evidence that Judge Crawford and two Commission members were part of an African American political organization that she has opposed since 2004 and as to which her activities resulted in an investigation and judicial charges against some of its members. Langford further provides a narrative of her theory as to how race and politics from years past factored into her termination by Judge Crawford and the County Commission's decision to uphold the termination. Primarily, her theory appears to be that as soon as an African-American Probate Judge was elected and as soon as there were African-American members on the County Commission, they "finally had the power to retaliate."

Without more than her unsupported narrative,[18] Langford has failed to meet her burden to establish a causal connection between her speech, eight years prior, regarding voter intimidation and voter fraud and the County Commission's decision to uphold Judge Crawford's termination. Therefore, Langford has failed to make a sufficient showing on an essential element of her claim upon which she has the burden of proof, and summary judgment is granted in favor of all Defendants as to this portion of her First Amendment Claim. *Celotex,* 477 U.S. at 323.

However, Langford also alleges that she was fired because she supported Judge Avery in the 2012 campaign against Judge Crawford.  There is no dispute of fact that she was Judge Avery's employee, that he hired her, and she supported Judge Avery in the recent 2012 campaign. Moreover, Langford was fired approximately two months after Judge Crawford

---

[18]   The Court notes that Langford provided a list of "additional facts that demonstrate both a racial/political animus and Defendant Crawford's association with" the political organization. (Doc. 43, p. 10)  However, it is not the Court's job to match the facts on her list to her argument.

assumed office and was replaced by Pickens, Judge Crawford's political supporter.  Therefore, assuming for purpose of summary judgment that the Chief Probate Clerk is not a confidential employee, Langford has produced sufficient evidence to create an issue of fact as to whether her political support for Judge Avery was causally connected to Judge Crawford's decision to terminate her employment and the County Commission's decision to uphold the termination. Accordingly, summary judgment is denied as to this portion of her First Amendment claim. *Tipton*, 965 F.2d 994 at 998-99 (In reviewing whether a non-moving party has met its burden, . . . the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movants favor).

     2. <u>Qualified Immunity</u>

     Judge Crawford argues that he is entitled to qualified immunity as to this claim brought against him in his individual capacity.  As previously stated, qualified immunity allows "officials to carry out discretionary duties without the chilling fear of personal liability." *Speight*, - - -  Fed. Appx. - - -, 2015 WL 4759988 at *3 (citing *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009)).  Officials are entitled to qualified immunity if they were acting within their discretionary authority and do not violate a clearly established constitutional right. *Id.* There is no dispute that Judge Crawford was acting within his discretionary authority when he terminated Langford's employment.

     As determined *supra,* a question of fact remains whether Judge Crawford violated Langford's constitutional rights under the First Amendment by terminating her due to her political patronage to Judge Avery.  However, even if this is established, Judge Crawford is still covered by qualified immunity unless it was clearly established that the Hale County Chief Probate Clerk was not a confidential employee.

The Eleventh Circuit addressed termination for political patronage reasons in *Beauregard*

*v. Olson,* 84 F.3d 1402, 1404 (11th Cir.1996). The circuit court stated as follows:

> But, in this qualified immunity case, we need not decide whether these deputized
> employees empowered by Florida law to act on behalf of the Tax Collector (a
> constitutional officer who faces partisan elections) can lawfully be fired for
> patronage reasons regardless of their actual duties. For Olson personally to prevail,
> it is enough if it was not clearly established that firing Plaintiffs for political
> patronage reasons would violate federal law. As we explained in *Lassiter v.*
> *Alabama A & M University,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc), for the
> law to be clearly established to the point that qualified immunity does not apply,
> the law must have earlier been developed in such a concrete and factually defined
> context to make it obvious to every reasonable person in Olson's place that to fire
> Plaintiffs would violate federal law.

*Beauregard,* 84 F.3d at 1404 (footnote omitted).

There is no clearly established law that a Probate Chief Clerk in Hale County is not an at-

will confidential employee, such that Judge Crawford's decision to terminate his Chief Clerk for

political patronage reasons would have been unlawful.  As explained in *Beauregard,*

> Violations of the constitutional right at issue in this case (the First Amendment
> right not to be fired for patronage reasons) are determined based on a standard
> "framed in vague and sweeping language certain to create vast uncertainty."
> *Branti [v. Finkel,* 445 U.S. 507, 522-24, 100 S. Ct. 1287, 1297 (1980)] (Powell,
> J. dissenting). In the light of such a vague standard, "elected and appointed
> officials at all levels ... no longer ... know when political affiliation is an
> appropriate consideration in filling a position." *Id.* at 522-26, 100 S.Ct. at 1297-
> 98.

> Justice Powell's concerns in *Branti* do not make *Branti* any less the law, but they
> do help explain why we have observed that "defendants who allegedly violate
> public employees' First Amendment freedoms rarely act within 'clearly
> established' contours of law." *Hansen v. Soldenwagner,* 19 F.3d 573, 575 (11th
> Cir.1994). This case is not the exceptional case where the individual defendant is
> unentitled to qualified immunity: it was not clearly established at the time Olson
> acted that firing Plaintiffs was unlawful.

*Beauregard,* 84 F.3d at 1405.  Accordingly, Judge Crawford is entitled to qualified immunity as

to this claim against him in his individual capacity.

      E. <u>Count VII alleging retaliation under 42 U.S.C. § 1981</u>

Langford claims that the Hale County Commission retaliated against her after Judge Crawford terminated her employment. Langford alleges that as part of the grounds for her grievance to the Commission, she asserted that Judge Crawford discriminated against her on basis of race. Langford alleges that these Defendants "retaliated against [her] for raising the issue of race discrimination by denying her appeal." (Doc.1, p. 13)

Count VII is captioned "42 U.S.C. § 1981 – Retaliation (Hale County and the Hale County Commission)" (Doc. 1, p. 13). Langford did not allege retaliation under Title VII. However, retaliation claims brought pursuant to § 1981 and § 1983 are analyzed under the same framework as a Title VII retaliation claim. *Smith v. City of Fort Pierce, Fla*., 565 Fed. Appx. 774, 776 (11th Cir. 2015) (finding "Title VII's anti-retaliation framework applied to all of Smith's retaliation clams"); *Mosley v. Alabama Unified Judicial System,* 562 Fed. Appx. 862, 869 (11th Cir. 2014) (applying Title VII analysis to a Section 1981 claim of retaliation).

To make her prima facie case of retaliation, Langford must show that she (1) engaged in a protected activity, "(2) [ ] suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Mealing v. Georgia Dept. of Juvenile Justice,* 564 Fed. Appx. 421, 427 (11th Cir. 2014) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)). "For an action to be an adverse action in the context of retaliation, the action 'must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68, 126 S. Ct. 2405, 2409, 2415, (2006).

Langford argues that she has met the elements of her prima facie case.  As to a protected activity, Langford argues that she alleged race discrimination, an unlawful employment activity, in her grievance.  She argues that the adverse employment action was the Commission's "rubber stamp[ing] her race-based termination".  She argues that causation is clear because filing the grievance – the evidence of her protected activity – and the adverse employment action, *i.e*, the decision to uphold Judge Crawford, were not totally unrelated.  As to temporal proximity, Langford argues that her grievance was filed on March 22, 2013, and the Commission voted on April 23, 2013, to uphold Judge Crawford's decision.

In this case, the adverse employment action (Langford being fired) occurred before the protected activity (filing a grievance).  Langford creatively attempts to overcome this fatal fact by incorrectly re-characterizing the adverse employment action as a denial of her grievance.  Moreover, a denial of a grievance by a person who has already been fired is hardly "harmful to the point" to dissuade an already fired employee from pursuing an appeal of the termination decision.  Accordingly, Langford's claim of retaliation by the Hale County Commission cannot be sustained.  Therefore, summary judgment is granted in favor of Defendants as to this claim.

V. Conclusion

Upon consideration and for the reasons set forth herein, it is ORDERED as follows:

Count I - Langford's motion for summary judgment is granted as to Count I, alleging violation of her Fourteenth Amendment right to Procedural Due Process.  Damages are reserved for trial. Defendants' motion for summary judgment is denied as to Count I.  Defendant Crawford's motion for summary judgment on basis that he is entitled to qualified immunity in his individual capacity is granted.

Counts II, IV and VI - Defendants' motion for summary judgment as to Counts II, IV,

and VI alleging discrimination on basis of race is denied.  Defendant Crawford's motion for summary judgment on basis that he is entitled to qualified immunity in his individual capacity is denied.

Count III – Defendants' motion for summary judgment is denied as to Defendants' argument that Langford is a confidential employee who is not protected by the First Amendment. Defendants' motion for summary judgment on basis that there is no causal connection between Langford's past speech regarding voter fraud and voter intimidation is granted.  Defendants' motion for summary judgment on basis that there was no causal connection between Langford's political association with Judge Avery and her termination is denied. Defendant Crawford's motion for summary judgment on basis that he is entitled to qualified immunity in his individual capacity is granted.

Count V - Langford conceded her claim of age discrimination.  Therefore, Defendants' motion for summary judgment is granted.

Count VII (retaliation) - Defendants' motion for summary judgment is granted.

**DONE** this the 1st day of September 2015.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE