**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **ANN LANGFORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Civil Action No. 2:14-00070-KD-M** |
| | ) |
| **HALE COUNTY ALABAMA** | ) |
| **COMMISSION and** | ) |
| **ARTHUR CRAWFORD in his Individual** | ) |
| **and Official Capacity,** | ) |
| | ) |
| **Defendants.** [1] | ) |

## ORDER

This action is before the Court on Plaintiff Ann Langford's motion for award of attorneys' fees, costs and expenses, and supporting exhibits (docs. 77-79, 79-1, 79-2, 79-3, 80-82, 82-1), Defendants Hale County Commission and Arthur Crawford's response in opposition and supporting exhibits (docs. 90, 90-1, 90-2), and Plaintiff's reply and supporting exhibits (docs. 96, 96-1, 96-2).

Plaintiff seeks an award of attorney fees in the amount of $255,445.00[2] and an award of costs and expenses in the amount of $10,873.49, for a total amount of $266,318.49. Upon consideration and for the reasons set forth herein, the motion is GRANTED, in part, and Plaintiff is awarded an attorney's fee in the amount of $98,230.00 and costs and expenses in the amount of $10,267.91, for a total amount of $108,497.91.

---

[1] Defendant Hale County, Alabama was dismissed on motion for summary judgment (Doc. 56).

[2] Plaintiff states that attorney Charles M. Ingrum, Jr. incurred a total of 714.40 hours (doc. 77, p. 2 (681.7 hours); doc. 96-2, p. 7 (26.7 hours); doc. 97, p. 10 (6 hours)). Applying the requested hourly rate of $300.00 yields an attorney's fee of $214,320.00. Plaintiff states that attorney Leigh Ann Carr incurred a total of 164.5 hours (doc. 77, p. 2). Applying the requested hourly rate of $250.00 yields an attorney's fee of $41,125.00.

I. <u>Statement of the law</u>

Plaintiff brought most of her claims pursuant to 42 U.S.C. § 1983. As to attorney's fees, "[t]he applicable statute, 42 U.S.C. § 1988, allows a district court to award attorney's fees to the prevailing party in civil rights cases brought under § 1983. The Court of Appeals for the Eleventh Circuit has stated that when a plaintiff succeeds in bringing a civil rights claim, 'he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority.'" *Barnes v. Zaccari*, 592 F. App'x 859, 869 (11th Cir. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 833, 131 S.Ct. 2205, 2213 (2011)) (internal quotation marks and citation omitted). She may be considered a prevailing party for § 1988 attorney's fees purposes if she "succeed[s] on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1935 (1983) (citation omitted).

Plaintiff brought one of her race discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, as amended. Title VII provides for an award of a reasonable attorney's fee as part of the costs for a prevailing party. 42 U.S.C. § 2000e-5(k). Because the attorney's fee provisions in § 1988 and § 2000e-5(k) contain substantially similar language and the standards for awarding fees are substantially the same, *see Hensley*, 461 U.S. at 433 n. 7, 103 S.Ct. 1933, the district court need not engage in a separate analysis.

Overall, a reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010). Generally, the starting point for calculating a reasonable attorney's fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorney's services. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988); *Hensley,* 461 U.S. at 433, 103

S. Ct. at 1935. To make this determination, the district court should consider the relevant factors among the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*[3] *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Johnson,* 488 F.2d 714, 717–719 (5th Cir. 1974)). The product of these two numbers is referred to as the "lodestar" and there is a strong presumption that the lodestar represents a reasonable fee. *Perdue*, 559 U.S. at 552 ("the lodestar method yields a fee that is presumptively sufficient to achieve [the objective of § 1988]. Indeed, we have said that the presumption is a 'strong' one.") (citations omitted).

After calculating the lodestar, "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 & n.1 (11th Cir. 2006). "When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." *Bivins,* 548 F. 3d at 1350-1351; *Cf. Mock v. Bell Helicopter Textron, Inc.,* 456 Fed. Appx. 799, 802 (11th Cir. 2012) (affirming a 25% reduction for lack of success in an ADEA action). The presumption that the lodestar is reasonable "may be overcome" and the lodestar enhanced "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a

---

[3] The Fifth Circuit instructed the district court to consider on remand, the following factors: (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment caused by accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation and ability; (10) the "undesirability" of the action; (11) the nature and length of the relationship between the attorney and client; and (12) awards in similar cases. 488 F.2d 714, 717–719.

reasonable fee." *Perdue,* 599 U.S. at 554 (citations omitted). The fee applicant "must produce specific evidence" that the "enhancement was necessary to provide fair and reasonable compensation." *Perdue*, 599 U.S. at 553 (citations omitted).

Although the "*Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar – doing so amount to double-counting." *Bivins*, 548 F. 3d at 1359 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562-563, 112 S. Ct. 2638 (1992); *Perdue,* 599 U.S. at 553 ("an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation."); *Barnes*, 592 Fed. Appx. at 871 (citing *Bivins,* 548 F. 3d at 1359).

II. <u>Analysis</u>

Plaintiff argues that she is a prevailing party and therefore entitled to a full award of attorney's fee incurred in bringing to trial her claims for violation of her right to freedom of affiliation under the First Amendment, race discrimination, and violation of her right to pre-termination procedural due process. Plaintiff argues that these claims are related because they are alternative legal theories leading to the conclusion that she was improperly terminated and because the same facts and evidence are relevant to all claims.

Alternatively, Plaintiff argues that she is entitled to a full award of attorney's fees because she prevailed as to her pre-termination due process claim, and, as to her First Amendment claim, because the jury decided that her political affiliation was a motivating factor in Defendant Crawford's decision to terminate her employment.

Defendants first argue that Plaintiff is not entitled to recover any attorney fees because her damages for the procedural due process claim are due to be reduced to nominal damages of $1.00. Alternatively, Defendants do not dispute that Plaintiff is a prevailing party as to her pre-

4

termination procedural due process claim or that she is entitled to receive a reasonable attorney's fee related to that claim. However, they argue that the due process claim is unrelated to the First Amendment or race discrimination claims and that Plaintiff should not recover any fees as to these claims. Defendants also argue that even though Plaintiff was successful in obtaining the jury's decision that her political affiliation was a motivating factor, they were successful on their "same decision" defense, and unlike in Title VII, this defense is a complete defense to liability for a § 1983 claim, including liability for attorney's fees, costs and expenses.

Defendants argue that Plaintiff's fee requests should be reduced to $43,243.20. Defendants arrived at this sum by way of a 30% reduction in the amount of hours, a reduction in the requested hourly rate for Ingrum to $250.00 and Carr to $100.00, and an additional 67% downward adjustment to the lodestar to account for Plaintiff's limited success.

A. Attorney fee request for services of Charles M. Ingrum, Jr.

1. Reasonable hourly rate

The Court may look to the prevailing hourly rate in the relevant legal community and awards of attorney's fees in similar cases, the fifth and twelfth factors in the *Johnson* analysis. Plaintiff states that $300.00 is a reasonable hourly rate for Ingrum. In support, Plaintiff provided attorney Mary E. Pilcher's affidavit as to her opinion that $400.00 per hour is the prevailing hourly rate in this district for skilled and experienced attorneys willing to represent individual plaintiffs in civil rights or discrimination cases (doc. 79-3). Pilcher states that she has approximately thirty years experience and since 2001, has practiced in this District almost exclusively (90%) in the area of civil rights and constitutional law. Pilcher is admitted to multiple federal and state courts and has lectured on constitutional law and federal civil practice.

Plaintiff points out that Ingrum, a senior partner with twenty years of experience, is licensed to practice in Alabama and admitted to all Federal Courts in Alabama, is licensed to practice in Georgia and admitted to the Northern and Middle District Federal Courts in Georgia, and admitted to practice before the Court of Appeals for the Eleventh Circuit. Ingrum states that he practices approximately 80% of his time in federal court and federal litigation with the remainder in state court litigation (*see* doc. 79-1, Ingrum Affidavit).

Defendants argue that Ingrum's experience in civil litigation and particularly civil rights litigation as opposed to bankruptcy is limited and therefore, $250.00 is a reasonable hourly rate. In support, Defendants provide the Court with a copy of a Pacer Case Locator report showing the number of federal cases in Alabama wherein Ingrum was an attorney (doc. 90-1). Defendants also point to several cases in this district wherein the district courts have approved $250.00 per hour as a reasonable rate for attorneys with approximately twenty years of experience or for attorneys with greater years of experience but limited experience in civil rights actions.

Generally, the "reasonable hourly rate" is defined as "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–896 n. 11, 104 S. Ct. 1541 (1984). The "relevant market" is usually the "place where the case is filed." *American Civil Liberties Union of Ga. v. Barnes,* 168 F.3d 423, 437 (11th Cir.1999) (citation and internal quotation marks omitted). Overall, the court is "'itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (quoting *Norman*, 836 F.2d at 1303). But the district courts are warned

that "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000).

Although the Court does not give controlling weight to prior awards, those awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this district for attorneys of reasonably comparable skill, experience, and reputation to that of Ingrum seeking an award of attorney's fees pursuant to a fee-shifting statute. *Norman*, 836 F.2d at 1299; *see Goldsby v. Renosol Seating, LLC,* 2013 WL 6535253, at *9 (S.D. Ala. Dec. 13, 2013) (FLSA collective action) ("[T]his Court's customary hourly rates for attorneys ... ranges from $250.00 to $300.00 for more experienced and qualified attorneys[.]"); *Oden v. Vilsack*, 2013 WL 404656 at *6 (S.D. Ala. Aug. 9, 2013) (awarding $250.00 per hour as a reasonable rate in the prevailing market for attorneys with fifteen to twenty years of experience including one attorney with forty years experience but with limited experience in civil rights actions) (action pursuant to the Equal Credit Opportunity Act); *Decorative Components Inc., Inc. v. ICON Computing Solutions, Inc.*, 2012 WL 5398800, *5-6 (S.D. Ala. Nov. 2, 2012) (recognizing that $250 to $350 per hour was a reasonable hourly rate for "top Mobile lawyers in complex cases") (citation omitted). The Court has also considered Pilcher's affidavit as to the hourly rate that she has been awarded as a civil rights and employment discrimination attorney with ten years more experience than Ingrum.[4]

---

[4] Pilcher has filed numerous single plaintiff employment discrimination actions against private and governmental entities in this court. *Norman*, 836 F.2d at 1300 ("[s]ingle plaintiff civil rights cases, of course, find analogies in employment discrimination cases and in other disputes where the representation is not the product of an ongoing relationship between the attorney and the client.").

Also, *Johnson* factors three and nine – "the skill requisite to perform the legal service properly" and "the attorney's experience, reputation and ability" – may be considered in determining a reasonable hourly rate.[5] The Court has considered the legal skills exhibited by Ingrum in his appearance before this Court and finds him to be an excellent litigator. In *Norman*, the Eleventh Circuit discussed legal skill in depth and instructed that the district courts may consider the "judgment shown in case assessment", "expertise in negotiations and tactics", "organization and efficiency", "knowledge of trial practice and knowledge of the substantive law" and last "persuasiveness." *Norman*, 836 F.2d at 1300-01. The Eleventh Circuit then explained that "[i]t is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar ...." *Norman*, 836 F.2d at 1301. The Court has observed Ingrum's skills in pursuing the seven-count complaint against four defendants (Hale County, Hale County Commission, Arthur Crawford in his official capacity, and Arthur Crawford in his official capacity).

As to experience, Plaintiff states that Ingrum "has undertaken and completed other cases regarding a plaintiff's rights under federal law in the past and has worked cases from both management-side and plaintiff's side" (doc. 78, p. 24). The Court reviewed the Pacer Case Locator information provided by the Defendants, which identifies the federal cases filed by Ingrum in the State of Alabama (doc. 90-1). The Nature of Suit codes indicate that Ingrum has

---

[5] *Brown v. Lambert's Cafe III*, 2016 WL 325131, at *3 (S.D. Ala. Jan. 27, 2016) (considering seven of the *Johnson* factors – "customary fees, fixed or contingent fees, novelty and difficulty of the question, undesirability of the case, skill required to perform the legal services properly, nature and length of the professional relationship with the client, and awards in similar cases" – to determine a reasonable hourly rate in an FLSA action).

been an attorney in only two civil rights actions: the case before this Court and a case pending

before another judge in this district. The latter is in the early stages.

In reply to Defendant's evidence, Ingrum states that he has appeared in over 4,000

bankruptcy cases during his twenty years of practice and that some of those cases have involved

questions of employment discrimination under 11 U.S.C. § 525,[6] including one appeal. He also

states that he has "handled cases in Georgia's state and federal courts, including one in federal

district court" (doc. 96-2, p.2). However, Ingrum offered no evidence as to whether he may have

pursued or defended other civil rights or employment discrimination actions in the federal or

state courts of Alabama or Georgia.

The Court may also consider the preclusion of other employment, whether a fee is fixed

or contingent, time limitations imposed by the client or circumstances, and the undesirability of

the litigation - the fourth, sixth, seventh, and tenth *Johnson* factors. Plaintiff argues that her

counsel is a member of a small law firm with limited resources and the extensive work required

in this litigation resulted in the near exclusion of other work. Plaintiff asserts that her counsel

took a substantial risk in representing her in a time-consuming, single plaintiff civil rights and

employment discrimination action on a contingent fee basis. Plaintiff argues that counsel has

experienced financial loss due to the delay in payment and the pre-payment of costs and

expenses since the complaint was filed in February 2014. Plaintiff has also provided Pilcher's

affidavit regarding the undesirability of representing single plaintiffs in civil rights action in

---

[6] Section 525 prohibits discriminatory treatment of persons in bankruptcy by a governmental
entity or a private employer, including discrimination in employment including termination from
employment.

support of her argument that the requested hourly rate will encourage attorneys to take this type

of undesirable, time-consuming, costly, and potentially stigmatizing action.[7]

Upon consideration of the foregoing, the Court finds $275.00 per hour is a reasonable

hourly rate for Ingrum. The Court finds that the awarded hourly rate is sufficient to encourage

capable attorneys to represent civil rights and employment discrimination clients, although there

is a risk of non-payment and that such representation may preclude other employment. *See*

*Perdue*, 559 U.S. at 552, 130 S. Ct. at 1673 ("a 'reasonable fee' is a fee that is sufficient to

induce a capable attorney to undertake the representation of a meritorious civil rights case").

Plaintiff requests a multiplier of 1.5 or 150%. However, her brief is unclear as to

whether she requests an increase in the customary hourly rate awarded or an enhancement to the

lodestar calculation of attorney's fees, or both (*See* doc. 78, p. 19, p. 21, and p. 25). She argues

that applying the multiplier would compensate counsel for the delay in payment, the substantial

risk in pursuing this litigation on a contingent basis, and for his willingness to take this

undesirable type of case. She also argues that applying the multiplier would encourage other

attorneys to handle civil rights actions.

In the past, courts had awarded enhancements for accepting civil rights or employment

discrimination actions on a contingent basis. *Richardson v. Alabama State Bd. of Educ.*, 935

F.2d 1240, 1248 (11th Cir.1991); *Martin v. Univ. of S. Alabama*, 911 F.2d 604, 611 (11th Cir.

1990); *Lattimore v. Oman Construction*, 868 F.2d 437, 439–40 (11th Cir. 1989). However, in

---

[7] Pilcher points out that individual plaintiff employment discrimination actions based upon circumstantial evidence are undesirable because the plaintiff usually lacks resources to finance the action. Pilcher also points to the complex nature of the applicable law, the complexity of federal court practices, the history of cases lost without compensation or reimbursement for out-of-pocket expenses, and the considerable time that may pass before attorney's fees are considered (doc. 79-3, p. 4).

*McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1185-1186 (11th Cir. 1993), the

Eleventh Circuit recognized that

> In June 1992, however, the Supreme Court determined that enhancement for
> contingency is not permitted under federal fee-shifting statutes. *City of Burlington
> v. Dague,* 505 U.S. 557, ——, 112 S.Ct. 2638, 2641, 2643–44, 120 L.Ed.2d 449
> (1992); *see also Independent Federation of Flight Attendants v. Zipes,* 491 U.S.
> 754, 758 n. 2, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989) (holding that
> case law construing "reasonable" fees applies to all similar federal fee-shifting
> statutes). This holding effectively overruled *Lattimore.* We must therefore reverse
> the contingency enhancement granted by the district court.

*McKenzie*, 990 F.2d 1183, 1185-1186 (11th Cir. 1993).

Therefore, the Court is constrained from enhancing the hourly rate or the lodestar based

upon the contingent fee arrangement and its inherent risk and delay in payment. *Hithon v. Tyson

Foods, Inc.*, 2013 WL 9768625, at *25 (N.D. Ala. Mar. 19, 2013) (rev'd on other grounds, 566

F. App'x 827 (11th Cir. 2014) ("[E]nhancement based upon the 'real risk of not prevailing' is

inappropriate.").  Moreover, the Court has already determined that the hourly rate awarded is

sufficient to encourage comparable attorneys in this market to represent individual clients in

potentially undesirable civil rights and employment discrimination actions.  Thus, the Court

declines the application of the requested multiplier.

2. Hours reasonably expended

As to hours reasonably expended, "[c]ounsel for the prevailing party should make a good

faith effort to exclude from a fee request hours that are excessive, redundant or otherwise

unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from

his fee submission." *Hensley,* 461 U.S. at 434, 103 S. Ct. at 1935. Therefore, the district court

should not allow any hours which are "excessive, redundant, or otherwise unnecessary" *i.e.*,

hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective

of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (emphasis omitted). "Redundant hours generally occur where more than one attorney represents a client", although "they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman,* 836 F. 2d at 1301-1302.

Generally, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783 for its "holding that where the billing record is voluminous, 'the district court need not engage in an hour-by-hour analysis[; r]ather, ... it may [ ] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction'") (bracketed text in original); *Mock,* 456 Fed. Appx. at 802 (affirming the district court's 20% across-the-board cut in total hours upon finding "a significant amount of redundancy, duplication, 'coordination' among counsel, and indivisible block billing, leaving it with a strong and abiding sense that the time and cost claimed is simply too large.")  If the district court employs an across-the-board cut, it must "provide a concise but clear explanation of its reasons for the reduction." *Loranger*, 10 F. 3d at 784.

To determine the hours reasonably expended, the Court may consider the first and second *Johnson* factors; the time and labor required and the novelty and difficulty of the questions. Plaintiff argues that the time spent was reasonable and necessary because this case was factually complicated and involved many fact witnesses that counsel had to locate, interview, and maintain contact. Plaintiff also states that the case was difficult and time intensive because there were multiple claims and defenses in complicated and difficult areas of federal law such as the First Amendment claims and qualified immunity defense. She points out that Ingrum defended

the motion to dismiss and motion for summary judgment as well as prepared Plaintiff's motion for partial summary judgment. Plaintiff also points out that the case involved the novel situation where an African American supervisor was alleged to have discriminated against a white employee.

Defendants argue that many of the descriptions of work performed are vague and contain block billing, thus making it difficult to determine whether the hours expended are reasonable. Defendants also argue that certain time entries reflect work that is not recoverable. Specifically, intra-office communications, non-legal tasks such as preparing notebooks, and clerical tasks. Defendants conclude that in view of the foregoing, the Court should apply an across-the-board cut of 30%, instead of attempting an hour-by-hour analysis.

The Court has reviewed the billing records submitted by Ingrum (doc. 80). Although certain descriptions are similar to the disfavored block billing,[8] they are not so vague or inseparable as to preclude an hour-by-hour analysis. The possibility of redundant hours, which generally occur when more than one attorney represents a plaintiff, has been eliminated by the exclusion of any attorney fees for Carr. *See* Section II.B.

Defendants referenced six specific time entries for intra-office communications that should be excluded: "Nos. 142, 152, 162, 165, 185, and 186" (doc. 90, p. 8). Defendants also identified entries "Nos. 146, 150, 151, 152, 171, and 174" as "clerical tasks" which should be

---

[8] "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). In that circumstance, separating the time reasonably expended from time that is not reasonable may be difficult.

excluded. However, the time entries were not numbered. They were entered by date. The Court will not count the lines to find these disputed time entries.

However, the Court has found six time entries that are the possible source of Defendants contested "intra-office communications" in that they show that Ingrum conferred with his partners and possibly one other attorney. Time entries for September 14, 2015 and September 28, 2015 indicate that Ingrum conferred "with partners about case for input" (doc. 80, p. 6, 7). On October 24, 2015, he conferred with "Ben Parr on evidentiary issues" (Id., p. 7). On October 27, 2015, Ingrum conferred with "Mr. Graham on legal issues" (Id., p. 7). The Court does not know whether Graham is a partner or another attorney with whom Ingrum conferred. On May 31, 2016, Ingrum reviewed the "jury list with partners and final questions before case" (Id., p. 8). On June 1, 2016, he reviewed "the case and jurors with his partners one last time" and conferred "with Ben Parr over evidentiary issues" (Id., p. 7, 9).

Each entry was made in a "block" with other work for Plaintiff. For example, on September 14, 2015, Ingrum entered ten and one-half hours for "Confer with partners about case for input. Several e-mails back and forth from Jamie Kidd concerning pretrial memorandum. Prepare pretrial memorandum" (doc. 80, p. 60). On October 24, 2015, Ingrum entered twelve hours for "Work on trial strategy and theme. Identify exhibits to go with witness questions. Legal research on hearsay issues. Confer with Ben Parr on evidentiary issues" (Id., p. 7). On June 1, 2016, Ingrum entered twelve hours for "Review case and jurors with partners one last time. Confer with Ben Parr over evidentiary issues. Travel to Mobile. Go over voir dire questions, decide which order to ask to incorporate the case, and which make the most sense. Meet with Ann Langford" (Id., p. 9).

Although the Court cannot ascertain the exact amount of time for each conference, the six time entries that reflect intra-office communications do not "represent a sizeable portion of the total hours billed", are not a "way to pad billings" and the communications may have been necessary to the action.[9] *Smith v. Werner Enterprises, Inc.*, 2015 WL 7185503, *6 (S.D. Ala. Nov. 13, 2015) ("Billings for 'intraoffice communication between plaintiff's multiple lawyers ... are disfavored and are subject to close scrutiny to prevent abuse.' Flags go up more readily when such billings 'represent a sizable portion of the total hours billed.' While some communication between a client's lawyers is necessary, even vital, it must not be allowed to become an easy way to pad billings.") (quoting *Lee v. Krystal Co,* 918 F. Supp. 2d 1261, 1269 & n.11 (S.D. Ala. 2013)).

As to the six time entries for Ingrum's performance of "clerical tasks", the Court has not been able to easily locate these entries as it did with the simple word search for "confer". However, review of the time sheets shows a few activities that might have been construed as clerical.   On September 26, 2015, Ingrum entered "Begin copying exhibits and organizing them into the bench book" (doc. 80, p. 7).  Arguably copying exhibits could be clerical, but organizing the bench book may entail more than just clerical skills.  On April 21, 2016, Ingrum entered "reissue subpoenas", another arguably clerical task which took one hour (doc. 80, p. 8).  But overall, the Court has been unable to spot any significant amount of time spent on clerical tasks.

The Court has reviewed the descriptions of the work performed and the hours expended in this litigation as delineated in Ingrum's billing statement.  The time entries show substantial work performed to defend the motion to dismiss, defend the motion for summary judgment,

---

[9]  For example, two entries indicate that the partners reviewed the juror list, arguably in part to ascertain any conflicts and in part to assist Ingrum with jury selection.

prepare Plaintiff's motion for partial summary judgment, jury selection and trial. Although block billing is present, the descriptions are generally sufficient for the Court to reasonably ascertain the division of work among the hours. For example, on October 26, 2015, Ingrum entered twelve hours for "Work on witness questions for Earline Isaac, Perry Beasley, Gary Manning, Tricia Galbreath, William Holmes. Decide what evidentiary material will go with each witness." On June 2, 2016, Ingrum entered twelve hours for "Jury selection. Travel. Continue to case preparation in regard to opening, closing, witness questions. Call from David Rogers concerning the time of his testimony. Call from Ann Langford concerning jury selection." The Court is aware of the approximate amount of time required for jury selection, travel from Opelika, Alabama to Mobile, Alabama, trial preparation and answering the sort of concerns described in these time entries.

Overall, the Court finds that the hours requested were reasonably expended in this litigation. Therefore, the Court declines Defendants' request for an across-the-board 30% reduction in hours.

### 3. Calculating the lodestar

The Court has determined that Plaintiff is entitled to an hourly rate of $275.00 for the legal services performed by Ingrum. The Court has determined that 714.40 hours were reasonably expended in this action. Accordingly, the lodestar is $196,460.00.

### 4. Adjustments to the lodestar

The Court may adjust the lodestar based upon the amount involved and the results obtained – the eighth *Johnson* factor. As to the eighth factor, Plaintiff argues that in a lawsuit with a common core of facts, *i.e.*, related claims, this Court should focus on the significance of the overall relief obtained. Plaintiff points out that she met her burden to prove that her political

16

affiliation was a motivating factor in the decision to terminate her employment and that she obtained a sizeable monetary award for her procedural due process violation claim. She also argues that this action resulted in a benefit to the public and the requested fee award is an incentive to attorneys to continue to benefit the public by policing compliance with the law.

Defendants argue that even if the claims may be related, the lodestar should be reduced because Plaintiff achieved only partial success. Defendants suggest a reduction of 67% because Plaintiff received far less substantive relief than what may have been awarded had she succeeded on the unsuccessful claims. They point out that initially there were eight different types of claims against four Defendants yielding a possible thirty-one distinct claims (the Title VII claim could not be brought against Defendant Crawford individually), as well as requests for injunctive relief, declaratory relief, compensatory damages and punitive damages, but the case was submitted to the jury as to only six claims.[10]

Defendants also argue that comparison of the amount of damages requested versus the amount actually received is an important factor. They assert that while Plaintiff recovered $110,230.00 for her procedural due process violation, the amount was still less than half of the approximately $220,000 plus emotional distress damages requested from the jury. Defendants also argue that Plaintiff's victory as to the pre-termination procedural due process claim does not vindicate a larger public purpose because of its fact-specific nature and because this claim did not raise a significant legal issue.

---

[10]  The damages against Defendant Crawford in his official capacity as Probate Judge and the Hale County Commission for the pre-termination due process claims; the Title VII claim for race discrimination against the Hale County Commission; the § 1983 race discrimination claims against Defendant Crawford in his individual and official capacities; and the First Amendment/political affiliation claim against Defendant Crawford in his official capacity.

Despite the "strong presumption that the lodestar is the reasonable sum that the attorneys deserve" *Bivins*, 548 F. 3d at 1350, "[t]he court may [ ] adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." *Association of Disabled Americans v. Neptune Designs, Inc*., 469 F.3d 1357, 1359 (11th Cir. 2006). In deciding whether to reduce the lodestar, the Eleventh Circuit has explained as follows:

> [w]here the plaintiff prevails on only some of his claims, as is the case here, special considerations come into play. First, the court should calculate the lodestar amount—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Having calculated that amount, the court can then reduce the lodestar to reflect the plaintiff's partial success. If the claims on which the plaintiff did not prevail and the claims on which he did prevail were "distinctly different claims ... based on different facts and legal theories," the court cannot award any fee for services on the unsuccessful claims. *Id.* at 434–35, 103 S.Ct. at 1939–40. However, if the unsuccessful and the successful claims "involve a common core of facts" or are "based on related legal theories," the court must compare the plaintiff's overall relief with the number of hours reasonably expended on the litigation. *Id.* at 435, 103 S.Ct. at 1940. If the plaintiff obtained "excellent results," his attorney should be fully compensated for all time reasonably expended on the litigation. *Id.* However, if the plaintiff obtained only "partial or limited success," the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief. That decision rests in the discretion of the district court. *Id.* at 436–37, 103 S.Ct. at 1941–42.

*Popham v. City of Kennesaw*, 820 F.2d 1570, 1578–1579 (11th Cir. 1987) (footnotes omitted).

"[T]he most critical factor is the degree of success obtained." *Villano v. City of Boynton Beach,* 254 F.3d 1302, 1305 (11th Cir. 2001) (citing *Hensley*, 461 U.S. at 436, 103 S. Ct. 1933). However, "[i]t is well established that where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" *Villano*, 254 F. 3d at 1306 (quoting *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933). "There is no room to doubt that a court may reduce a § 1988 award

18

when the degree of success obtained is limited, even when a plaintiff obtains a favorable jury verdict that a constitutional right was violated." *Villano*, 254 F. 3d at 1306. Overall, "a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." *Bivins*, 548 F.3d at1350-1351 (citations omitted). "What constitutes partial success is determined on a case-by-case basis." *Id.*, at n.3 (citing *Hensley,* 461 U.S. at 434-36, 103 S.Ct. 1933.

However, "success in a civil rights case 'cannot be valued solely in monetary terms.'" *Villano*, 254 F. 3d at 1306 (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686 (1986). The Eleventh Circuit has "previously explained that a court that reduced a §1988 award 'would have erred had it ignored the fact that [the plaintiff in a civil rights action] benefitted the public interest by vindicating his constitutional rights." *Id.* (quoting *Popham*, 820 F. 2d at 1580) (bracketed text in original). And, "vindicating a constitutional right against a municipal defendant heightens the public benefit created by a lawsuit." *Id.* at 1307.

Also, "[t]he relative importance of a money damage award must be determined on a case-by-case basis." *Villano*, 254 F. 3d at 1307. Relevant to this action, "where compensatory damages constitute the primary relief sought and become the only relief obtained, a court is not beyond its discretion in considering the damages awarded as a relevant factor." *Id.* However, while finding that the amount of damages is relevant, the Supreme Court "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside,* 477 U.S. at 574, 106 S.Ct. 2686. "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano,* 254 F.3d at 1305 (quoting *Hensley*, 461 U.S. at 436, 103 S. Ct. 1933).

The Court finds that the successful and unsuccessful claims are related because they arose from a common core of facts. *Popham*, 820 F. 2d at 1578-1579. Also, at least three of her claims – race discrimination under the Equal Protection Clause, Title VII, and 42 U.S.C. § 1981 – were based upon related legal theories. The Court has considered the benefit to the public interest by vindication of Plaintiff's constitutional right as a public employee to pre-termination procedural due process. *Villano,* 254 F.3d at 1306. The Court has also considered Plaintiff's success on motion for summary judgment in obtaining judgment as a matter of law that her right to pre-termination procedural due process was violated and her success in obtaining a jury award of $110,230.00 as damages for the violation. The Court has also considered the lack of success on the majority of her claims against the Defendants. Moreover, most of the evidence presented at trial was in support of the unsuccessful claims.

Accordingly, the Court finds that reducing the lodestar of $196,460.00 by fifty (50%) percent is appropriate in view of Plaintiff's limited success but also to recognize that "vindicating a constitutional right against a municipal defendant heightens the public benefit created by a lawsuit." *Villano*, 254 F. 3d at 1307. Applying the reduction to the lodestar, the Court awards an attorney's fee of $98,230.00 for the work performed by Ingrum.

B. Attorney fee request for services of Leigh Ann Carr

Plaintiff states that counsel Leigh Ann Carr reasonably incurred a total of 164.5 hours and her reasonable hourly rate is $250.00 per hour, for a total fee of $41,125.00. Plaintiff states that Carr assisted Ingrum with trial preparation and trial. In support of a fee award for Carr's time, Plaintiff argues that this was a factually complicated case involving a large number of fact witnesses, that the issues were novel, that many of the issues were based upon complicated areas of federal law, and that considerable time was spend managing the witnesses. Plaintiff points out

that Carr has been practicing for twelve years and $250.00 per hour is a reasonable rate for an attorney with her experience.

Defendants argue that Carr did not take an active role at trial and that most of her work was secretarial or paralegal in nature. They also argue that because of the limited nature of her involvement and lack of relevant legal experience, a reasonable hourly rate as an associate attorney would be $100.00. Defendants point out that duplication of effort by Carr and Ingrum is obvious from the limited descriptions and propose an across-the-board reduction of 30% of the total hours.

In *Norman,* 836 F.2d at 1301–1302, the Eleventh Circuit explained that "[r]edundant hours generally occur where more than one attorney represents a client." However, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman,* 836 F.2d at 1301–1302; *Johnson v. University College of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Circ. 1983), *cert. denied*, 464 U.S. 994 (1983) ("The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work. … [A] reduction is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.") (italics in original). Also, "[t]he time billed for excessive lawyers in a courtroom or conference" when not specifically necessary, "may obviously be discounted." *Barnes*, 168 F.3d at 433 (citation omitted).

The Court has reviewed the time sheet submitted by Carr and has been unable to identify any time entries that indicate a distinct contribution to this action. The majority of the pre-trial

time entries indicate that Carr reviewed pleadings, motions, orders, jury instructions, and other documents; read witness depositions, reviewed or proof-read witness questions, and compared the questions to their respective deposition testimony[11]; worked on opening and closing statements; performed legal research; met with the Plaintiff; and organized files and exhibits;[12] all of which is work that Ingrum performed. (*Cf.* Doc. 81, with pages 8-9 of Doc. 80). Both Carr and Ingrum worked on the mock trial. (*Cf.* Doc. 81, May 30, 2016, "First mock trial. Assist Charles on timing and revisions" with Doc. 80, May 30, 2016, "First mock trial. Work on timing of opening and closing. Revise and re-write.")

As to Carr's contribution during jury selection, her time entries indicate that she reviewed the juror lists and juror questionnaires and went over the voir dire questions with Ingrum (doc. 81). Again, Ingrum also performed the same work (doc. 80, p. 8-9). As to Carr's contribution during the trial, the ten-hour time entry for the first day reads "prepare for day two", legal research on an issue, and help with closing (Doc. 81). The results of her legal research may have been a distinct contribution, but Ingrum made the same time entry, which indicates both attorneys were researching the same issue (*Cf.* Doc. 81 with Doc. 80, entries for June 6, 2016). For the second and third days of trial, the time entries read "Second day of trial" and "Third day

---

[11] For example, Ingrum made the following time entry for May 31, 2016, "Start to review Judge Crawford's deposition, and make sure all questions cite to his deposition …" (doc. 80, p. 8). Carr made the following time entry for May 26, 2016, "Proof read Crawford witness questions and how they match up with deposition" and June 4, 2016 "Go over …Crawford Questions and citing the deposition to Crawford's questions" (doc. 81).

[12] Some of the work performed was work customarily performed by a clerical assistant and not compensable or by a paralegal and not compensable at an attorney's rate. (Doc. 81, May 29, 2016 "Go to Office Depot to get supplies, stands, more paper"; May 23, 2016 "Prepare my trial notebook, copy depositions, Complaint, Order on Summary Judgment …"; May 31, 2016 "Get binders organized and exhibits aligned with questions").

of trial. Drive home." Although, some of Carr's time entries indicate that she worked on opening and closing arguments (doc. 81)[13], the Court does not recall that Carr made either argument.

Overall, a "fee applicant is entitled to recover for hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple lawyer litigation." *Barnes*, 168 F.3d at 432. Based upon the Court's own experience, the time entries are redundant and unreasonable because they do not indicate Carr's distinct contribution. Since there is no evidence that Carr made a distinct contribution to the action, Plaintiff's request for an award of an attorney's fee for the work performed by Carr is denied. *See Quainoo v. City of Huntsville, Alabama,* 611 Fed. Appx. 953, 955-956 n.2 (11th Cir. 2015) (finding that the district court did not abuse its discretion in excluding "approximately $22,000 in fees for the hours expended by the second attorney for Plaintiff Quainoo in participating in the trial).

II. Plaintiff's motion for costs

A. Statement of the law

In this circuit, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Hithon*, 566 Fed. Appx. at 830 (citing *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)). Expenses that may not be taxed as costs pursuant to 28 U.S.C. § 1920 may be included in a § 1988 attorney's fee award. Therefore, "the 'reasonableness' standard articulated in § 1988 is liberally applied" *Hithon,* 566 Fed.Appx. at 830; *Hayden v. Vance,* 2016 WL 4157362, *7

---

[13] "Assist Charles in going over opening and closing arguments", "Go over opening and closing with Charles", "Go over timing of Opening/Closing", "Practice Opening", "Help Charles with closing" (doc. 81).

23

(N.D. Ala. June 28, 2016) ("[w]hen reviewing costs and expenses, 'the standard for reasonableness is to be given a liberal interpretation.'") (quoting *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987)).

"To determine which expenses may properly be included, the court must look to 'the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted.'" *Hayden,* 2016 WL 4157362, at *7 (quoting *Dowdell, 698 F.2d at 1192).* "The Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research." *Hall v. Siemens VDO Auto. Elecs. Corp.*, 2014 WL 1329553, at *11 (N.D. Ala. Mar. 31, 2014) (quoting *Yule v. Jones*, 766 F.Supp.2d 1333, 1344 (N.D. Ga. 2010) (collecting cases and citing *Trotter v. Columbia Sussex Corp.*, 2010 WL 383622, *10–12 (S.D. Ala. Jan. 29, 2010)); *Oden v. Vilsack,* 2013 WL 4046456 (S.D. Ala. Aug. 9, 2013). *Overall, the* "fee applicants bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs." *Hayden,* 2016 WL 4157362, at *7 (quoting *Lee v. Krystal Co.*, 918 F.Supp.2d 1261, 1275 (S.D. Ala. 2013) (quoting *Andrade v. Aerotek, Inc.*, 852 F.Supp.2d 637, 645 (D. Md. 2012)).

B. Analysis

Plaintiff seeks costs in the total amount of $10,873.49 (doc. 82, Bill of Costs; doc. 82-1, breakdown of costs; doc. 96-2, p. 9-35, supporting documents). Plaintiff seeks the fees of the Clerk ($400.00), fees for service of summons and subpoenas ($21.75), fees for transcripts from four depositions ($1,825.17), fees for five witnesses ($1,219.94, attendance plus mileage),[14] fees

---

[14] Plaintiff seeks witness fees under 28 U.S.C. § 1821 (doc. 82, p. 2). Title 28 U.S.C. § 1821(c)(2) provides: ""A travel allowance equal to the mileage allowance which the

exemplification and costs of copies ($679.50, copies for litigation and trial - 1,359 at $.50 per copy), costs incident to taking depositions ($844.94 mileage and hotel) and other costs ($5,903.94, mileage, hotels, reprographics, audio services, folders/stands/paper/pens, toner, and postage) (doc. 82-1).

Defendants object to the expenses related to the deposition of Perry Beasley ($358.28 - deposition transcript, witness fee and mileage). They state that Beasley did not testify and his deposition was not used at trial. Defendants argue that these costs are not recoverable because they were not incurred for an item that was reasonably necessary in this case as required by 28 U.S.C. § 1920. Plaintiff responds that Defendants noticed Beasley's deposition and it was not unreasonable for Plaintiff's counsel to attend the deposition. Giving the reasonableness standard a liberal application, the Court agrees. Even though Plaintiff may not ultimately have used the deposition at trial or called Beasley as a witness, it was not unreasonable for her counsel to attend the deposition. The Court finds that these costs were reasonably incurred in this litigation.

Defendants object to the costs for copies on basis that there were no invoices or explanation to support the request for $679.50. Plaintiff responds that the exhibit to the Bill of Cost stated the number of pages and that the copies were of exhibits, depositions, and pleadings to be used at trial. The Court finds that these costs were reasonably incurred in this litigation.

Defendants object to the expenses for Ingrum's travel on three occasions from Opelika, Alabama, with an overnight stay in Tuscaloosa, Alabama before going to his destination in

Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services." http://www.gsa.gov/portal/category/104715. The current rate is $0.54 yielding $957.96. Plaintiff appears to have applied the 2015 rate of $0.57, yielding $1,219.94.

Greensboro, Alabama. Defendants argue that there is no explanation or justification for this travel. Plaintiff responds that there are no reasonable accommodations in Greensboro, Alabama and that Tuscaloosa was the nearest place with reasonable accommodations. Defendants appear to object to Ingrum's failure to stay in Greensboro, where his client resides. However, Plaintiff has given a reasonable explanation as to why her counsel stayed in Tuscaloosa as opposed to Greensboro. The Court finds that these costs were reasonably incurred in this litigation.

Defendants object to a duplication of costs for mileage on May 13, 2014. Plaintiff seeks costs ($94.01) from Opelika to Tuscaloosa under the category "costs incident to taking depositions" and costs ($181.66) from Opelika to Greensboro to Opelika under the category "other costs" (doc. 82-1, p. 3-4). Review of Ingrum's time sheets indicates that the year is incorrect in the category "costs incident to depositions." On May 13, 2014, Ingrum entered time for an in-person meeting with Plaintiff. On May 13, 2015, Ingrum entered time for driving to Tuscaloosa, reviewing the complaint and discovery and the order on motion to dismiss, and contacting Plaintiff. The next day, May 14, 2015, Ingrum entered time for driving to Greensboro, meeting with Plaintiff and attending her deposition, and driving back to Opelika. The Court finds that these costs were not duplicative and were reasonably incurred in this litigation.

Defendants object to Plaintiff's costs for counsel's overnight stay in Mobile, Alabama, the night before the final pretrial conference. Defendants point out that they drove down that morning. Plaintiff responds that the drive from Opelika is longer than the drive from Montgomery, Alabama, where defense counsel's offices are located, and asks the Court to take judicial notice of the distance. The Court finds that it is not unreasonable for counsel to arrive a day early for court proceedings. The Court finds that these costs were reasonably incurred in this litigation.

Defendants object to the costs for postage ($116.10) on basis that there was no supporting documentation or explanation in support of the request.  Plaintiff responds that the items mailed were related to this litigation. Plaintiff provided a description of each mailing, which included letters and discovery provided to the defense.  The Court finds that these costs were reasonably incurred in this litigation.

Defendants object to the costs for Auburn Reprographics ($115.54) and Reveal Audio Services ($150.00) on basis that there was no supporting documentation or explanation.  Plaintiff responds that Auburn Reprographics produced the demonstrative trial exhibits and that Reveal Audio Services cleaned the recording of a witness interview in case the recording was necessary for use at trial.  The Court finds that these expenses were reasonably incurred in this litigation.

Defendants object to the expenses for folders, stands, paper, pens, and toner on basis that these items are ordinary office supplies.  The Court agrees.  The costs of these items ($343.60) are disallowed because the costs were incurred as part of "routine office overhead". *Hithon,* 566 Fed. Appx. at 830.

Defendants object to the expenses for mileage and hotel fees related to Tucker North's presence at trial on basis that Plaintiff made no explanation as to why his presence was necessary. Plaintiff responds that North assisted with logistical matters and provided assistance to the witnesses.  Plaintiff also states that she is not requesting any hourly fees related to North's assistance at trial.  Arguably, North occupied a position similar to that of a clerical assistant as to whom an hourly rate is not applicable because such expense is generally part of the routine overhead of a law practice.  However, it is not unreasonable for counsel to have assistance with logistical matters and witnesses during trial.  Therefore, the Court finds that North's travel expenses were reasonably incurred in this litigation.

As an additional matter, the Court has denied Plaintiff's request for attorney's fees as to Carr upon finding that she made no distinct contribution as an attorney in this action. However, based upon the instruction from *Hithon,* that § 1988 requests for costs and expenses are to be given a liberal construction, the Court finds that Carr's travel expenses were reasonably incurred in this action.

III. Conclusion

Upon consideration of the foregoing, attorney's fees in the amount of $98,230.00 and costs and expenses in the amount of $10,267.91 ($10,873.49 minus $343.60 for office supplies and $261.98[15] for mileage for witnesses) are awarded in favor of Plaintiff, for a total of $108,497.91.

**DONE** and **ORDERED** this the 16th day of September 2016.

 s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[15] *See* Footnote 14.